Jeremy Pinson #16267-064
Name and Prisoner/Booking Number
USP Tucson
Place of Confinement
P.O. Box 24550
Mailing Address
Tucson    AZ   85734
City, State, Zip Code

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

[ **FILED** ]

APR 24 2023

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
Eastern ~~————~~ DISTRICT OF ~~————~~ California

Jeremy Pinson ,
(Full Name of Plaintiff)

Plaintiff,

v.

(1) Fed. Bureau of Prisons ,
(Full Name of Defendant)
(2) United States of America ,
(3) Mark Gutierrez ,
(4) Mary Rios ,
Defendant(s).

☐ Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. 23-CV-00006-EFB
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT
BY A PRISONER**

☐ Original Complaint
☒ First Amended Complaint
☐ Second Amended Complaint

## A.   JURISDICTION

1.   This Court has jurisdiction over this action pursuant to:
     ☐ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
     ☒ 28 U.S.C. § 1331; ~~————————————————~~
     ☒ Other: FTCA, 28 U.S.C. 2671-80 .

2.   Institution/city where violation occurred: Stockton, CA ; Tucson, AZ; Washington, D.C.

Revised 3/11/16                                  1

**550/555**

## B.  DEFENDANTS

1.  Name of first Defendant: _Federal Bureau of Prisons_ .  The first Defendant is employed
as: _Federal Agency_ at _Stockton Reg. Office_ .
    (Position and Title)                          (Institution)

2.  Name of second Defendant: _United States of America_ .  The second Defendant is employed as:
as: _FTCA Def._ at _BOP_ .
    (Position and Title)                          (Institution)

3.  Name of third Defendant: _Mark Gutierrez_ .  The third Defendant is employed
as: _Warden_ at _USP Tucson_ .
    (Position and Title)                          (Institution)

4.  Name of fourth Defendant: _Mary Rios_ .  The fourth Defendant is employed
as: _Regional Director_ at _Stockton CA Office_ .
    (Position and Title)                          (Institution)

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C.  PREVIOUS LAWSUITS

1.  Have you filed any other lawsuits while you were a prisoner?  ☑ Yes      ☐ No

2.  If yes, how many lawsuits have you filed? _100 plus_ .  Describe the previous lawsuits:

    a.  First prior lawsuit:
        1.  Parties: _____ v. _____
        2.  Court and case number: _____ .
        3.  Result:  (Was the case dismissed?  Was it appealed?  Is it still pending?)_____
            _____

    b.  Second prior lawsuit:
        1.  Parties: _____ v. _____
        2.  Court and case number: _____ .
        3.  Result:  (Was the case dismissed?  Was it appealed?  Is it still pending?)_____
            _____

    c.  Third prior lawsuit:
        1.  Parties: _____ v. _____
        2.  Court and case number: _____ .
        3.  Result:  (Was the case dismissed?  Was it appealed?  Is it still pending?)_____
            _____

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

## D.   CAUSE OF ACTION

### COUNT I

1.   State the constitutional or other federal civil right that was violated: _Violation Of First Amendment_

2.   **Count I**.   Identify the issue involved.   Check **only one**.   State additional issues in separate counts.
   ☐ Basic necessities          ☐ Mail                    ☐ Access to the court       ☐ Medical care
   ☐ Disciplinary proceedings   ☐ Property                ☐ Exercise of religion      ☒ Retaliation
   ☐ Excessive force by an officer   ☐ Threat to safety    ☐ Other: _____.

3.   **Supporting Facts.**   State as briefly as possible the FACTS supporting Count I.   Describe exactly what **each Defendant** did or did not do that violated your rights.   State the facts clearly in your own words without citing legal authority or arguments.

_See Pages 7 thru 20_

4.   **Injury.**   State how you were injured by the actions or inactions of the Defendant(s).

_See Pgs. 7-20_

5.   **Administrative Remedies:**
   a.   Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?                                                                                        ☒ Yes     ☐ No
   b.   Did you submit a request for administrative relief on Count I?                              ☒ Yes     ☐ No
   c.   Did you appeal your request for relief on Count I to the highest level?                     ☒ Yes     ☐ No
   d.   If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not.   _____

**COUNT II**

1.  State the constitutional or other federal civil right that was violated: Violation of 8th Amendment

2.  **Count II.** Identify the issue involved.  Check **only one**.  State additional issues in separate counts.
    ☐ Basic necessities          ☐ Mail              ☐ Access to the court       ☒ Medical care
    ☐ Disciplinary proceedings   ☐ Property          ☐ Exercise of religion      ☐ Retaliation
    ☐ Excessive force by an officer   ☐ Threat to safety   ☐ Other: _____.

3.  **Supporting Facts.**  State as briefly as possible the FACTS supporting Count II.  Describe exactly what **each Defendant** did or did not do that violated your rights.  State the facts clearly in your own words without citing legal authority or arguments.

    See Pgs. 21 to 27

4.  **Injury.**  State how you were injured by the actions or inactions of the Defendant(s).
    See Pages 21 - 27

5.  **Administrative Remedies.**
    a.  Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?                                                                    ☒ Yes    ☐ No
    b.  Did you submit a request for administrative relief on Count II?                      ☒ Yes    ☐ No
    c.  Did you appeal your request for relief on Count II to the highest level?            ☒ Yes    ☐ No
    d.  If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____
    _____.

4

**COUNT III**

1. State the constitutional or other federal civil right that was violated: Violation of FTCA, 28 U.S.C. 2671-80.

2. **Count III.** Identify the issue involved.  **Check only one.**  State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☒ Other: Fed Tort Claim

3. **Supporting Facts.**  State as briefly as possible the FACTS supporting Count III.  Describe exactly what **each Defendant** did or did not do that violated your rights.  State the facts clearly in your own words without citing legal authority or arguments.

   Same as Count I, the staff failed to protect plaintiff from Tyrone Brown in violation of 28 CFR 115.62 and exacerbated the mental and emotional trauma caused by Brown's attack by violating 28 CFR 115.67 as described in pages 7 thru 20 herein. Brown caused serious injuries to Pinson, Zaragosa-Solis and Guli'sano. Brown continued to threaten to rape and murder Pinson long after 9-14-22 and the BOP refused to enforce 28 CFR 115.67 at any point in time.

4. **Injury.**  State how you were injured by the actions or inactions of the Defendant(s).

   Head injury, pain and suffering, PTSD, laceration to scalp

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?   ☐ Yes   ☐ No
   b. Did you submit a request for administrative relief on Count III?   ☐ Yes   ☐ No
   c. Did you appeal your request for relief on Count III to the highest level?   ☐ Yes   ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

**If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.**

SF-95 Claim was filed Oct. 3, 2022 and 180-days expired on April 1, 2023.

## E. REQUEST FOR RELIEF

State the relief you are seeking:

1. Award plaintiff #10,000,000.00 on Count III against defendant USA.
2. Enter permanent injunction, and appoint Special Master to
monitor and enforce injunction, enjoining the widespread culture and
practice of retaliation within the BOP systemwide, enjoining plaintiffs
housing in segregation or solitary confinement, enjoining BOP's Western
Regional Director's failure to strictly enforce 28 CFR 115.67, enjoining
plaintiff's contact with Tyrone Brown, enjoin BOP from housing the
plaintiff in a cisgender male prison.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 4-18-22

DATE

SIGNATURE OF PLAINTIFF

(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

(Signature of attorney, if any)

(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space, you may attach no more than fifteen additional pages. But the form must be completely filled in to the extent applicable. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.

6

Count I (Retaliation) Statement of Facts Cont'd:

As a preliminary matter plaintiff models her facts in accordance with the test outlined in Rhodes v. Robinson, 408 F.3d 559 (9th Cir. 2005) herein:

1. BOP's Adverse Actions:

On Sept. 14, 2022 following plaintiff being attacked by a sexual predator she was placed into the Special Housing Unit ("SHU") at the United States Penitentiary in Tucson, AZ. ("TCP") Her placement in Administrative Detention ("AD") was specified as for "an SIS investigation." SIS, which stands for Special Investigative Services, is an intelligence gathering and investigative department within all BOP institutions such as TCP and conducts their investigations pursuant to Program Statements 5521.06 and SIS Manual, among others.

As part of the investigation plaintiff was interviewed along with inmates Tyrone Brown, the perpetrator of the assault, Justin Gulisano and Ernesto Zaragoza Solis (Brown's other victims on Sept. 14, 2022), Daniel Barrios Sr., Willie Davis, and Jose Armendariz who all tried to protect plaintiff from Brown, as her friends, on Oct. 5, 2022 by Lt. Christensen the

investigator to the investigation begun Sept. 14, 2022 in the SHU.

During his interview, Christensen posed an identical ultimatum to plaintiff, Zaragosa-Solis, Guliano, Davis, Berrios Sr. and Armendariz: drop any civil claims against USP Tucson Staff and the BOP or else stay in SHU and be transferred. The threat was echoed by Warden Mark Gutierrez. Plaintiff had Judge Rosemary Marquez Summary Judgment decision, Doc. 117 in Case No. 19-CV-00422-RM, in her hand when she arrived to her interview because it had been her intention to point out to Christensen and Gutierrez that she had had a right under 28 C.F.R. 115.62 to protection from Tyrone Brown as did Zaragosa-Solis and Guliano whom Brown initially targeted.

Christensen was visibly angered by the Court Order, his face flushed red, his speech became loud, his language laced with profanity as he yelled at plaintiff he "didn't give a fuck" what any "Judge or Court thinks" and that plaintiff needed to understand "Judges don't run the BOP" among many other comments before returning to his threat: agree to drop all civil claims or stay in SHU and be transferred.

8

Plaintiff, Armendariz and Zaragosa-Solis declined to agree to drop any civil claims; Cutisano, Davis and Berrios S. agreed not to pursue any civil claims Within a few weeks upon completion of his report Christensen submitted it to Warden Gutierrez for a decision. Gutierrez ordered Cutisano, Davis and Berrios released to general population, he ordered Pinson, Armendariz and Zaragosa-Solis to be kept in SHU and transferred.

Within the BOP, which consists of a headquarters office in Washington, D.C. ("Central Office"), 6 Regional offices, and 122 BOP managed facilities throughout the Country, the Designation and Sentence Computation Center "DSCC" is charged with, among other things "ensuring placement of inmates in facilities commensurate with their security and program needs." This process is called "redesignation upon transfer of an inmate.

The DSCC, in cases of Care Level 3 inmates works with BOP's Office of Medical Designations and Transfers (_____ ("OMDT") along with the Transgender Executive Council in cases of Transgender inmates Plaintiff is a transgender female with a Mental Health Care Level 3.

9

BOP Program Statement 5100.08 entitled the Inmate Security Designation and Custody Classification Program Statement (dated Sept. 12, 2006) provides guidelines and procedures for all redesignations. There are several types of inmate transfers requiring the redesignation process. The transfer types relevant in this case are "Disciplinary" (Code 309) and "Close Supervision" (Code 323). No transfer begins until a Warden submits a Request For Transfer (Form 409) to the DSCC.

The DSCC, and TEC, consider various factors in selecting a facility for the inmate's transfer. Federal Law requires that inmates be placed "in a facility as close as practical to the prisoner's primary residence, and to the extent practicable, in a facility within 500 miles of that residence." 18 U.S.C. 3621(b). ✗

Also relevant, BOP policy (Program Statement 5200.04) and regulations (28 C.F.R. 115.42) require placements of all transgender inmates using the "inmate's own views with respect to his/her safety must be given serious consideration." The BOP "shall not place transgender inmates" on the basis of their "external genital anatomy."

Warden Gutierrez submitted a Form 409 seeking transfer of plaintiff using false and misleading information. It did

not contain plaintiff's own views on her safety
and after submission Warden Gutierrez bragged
to plaintiff that he was responsible for her being
in SHU and facing a transfer, prior to her Form
409 being submitted.

On Nov. 3, 2022 plaintiff attended a settlement
conference in Case No. 19-CV-00401-RM before
U.S. Magistrate Judge Leslie O. Bowman with
AUSA Denise Ann Faulk and BOP Attorney Clay
C. Cook participating. En route to the video
conference Assistant Warden Muhammad Zaintout
confronted plaintiff calling her a "troublemaker".
At the conference, plaintiff was cooperative, polite
yet assertive that she wanted release from SHU
and changes in BOP SHU Procedures, which Cook
and Faulk declined. During a lunch break while
plaintiff discussed her case with Judge Bowman
the plaintiff expressed frustration about staff
retaliation which Judge Bowman reacted to by
vigorously shaking her head left and right stating
"I'm gonna have to put my Judge hat back on"
and expressed disbelief that BOP was engaged
"in some kind of conspiracy" to retaliate against
plaintiff and of. Cook and Faulk stated "they
dont believe they did anything wrong. Five days

11

later Gutierrez submitted plaintiff on a Form 409 for a transfer, and later that night charged her with a Code 203 and 209 for "threatening another person with bodily harm" claiming plaintiff's statement to SIS Lt. Christensen on Oct. 5, 2022, that if staff did not leave her alone and release her from SHU she was going to sue them and the BOP for violating her rights, was a "threat under Code 203 and 299. The incident report number was assigned 3695602, and at a subsequent hearing on the charge pursuant to 28 C.F.R. 541.8 plaintiff was acquitted of all charges. Despite the acquittal, Warden Gutierrez refused to release plaintiff from SHU and when confronted with the acquittal claimed "I don't care about that, if I say you're guilty that's that".

## 2. But For Protected Activity:

Prior to the Oct. 5, 2022 interview wherein the threats previously described herein were presented in an ultimatum to plaintiff, plaintiff had filed an SF-95 Tort Claim for her injuries Sept. 14, 2022 as well as filed a complaint with the DOJ Office of Inspector General, verbally told a regional official T. Hinkle of Gutierrez/Christensen's threats, complained to her attorneys and family who also sent complaints to BOP and OIG, as well as representatives of the news media on 29 separate occasions from Sept. 14, 2022 until ▓▓ Oct. 5, 2022. Additionally after

the Oct. 5, 2022 ultimatum until the submission
of the Form 409 plaintiff attended the settlement
conference on Nov. 3, 2022 and filed additional
complaints and organized calls between attorneys
and Justin Gulisano. On Nov. 8, 2022 the Form
409 and false disciplinary charges were filed
against plaintiff.

3. Chilling Effect/Reasonable Correctional Goal:

The threats did deter inmates Gulisano, Davis
and Barrios Sr. Their impact on plaintiff were
the cause of substantial stress and emotional
distress including multiple occasions of strong
urges to commit suicide. The actions of Gutierrez
and Christensen were not consistent with BOP
policies and regulations, federal law or the U.S.
Constitution. They generated no known benefit
to the inmates or staff of the BOP or USP Tucson.
At the same time Gutierrez/Christensen were
forcing the issue of plaintiff's transfer, Gutierrez
was releasing a flood of inmates to the general
population who were convicted of serious offenses.
Examples of the individuals with disciplinary
offenses released by Gutierrez to general population
at USP Tucson are contained in the following

Table =

| Name | Offense(s) |
|---|---|
| Ivan Mejia | Code 104, Possession of a Weapon |
| Daniel Jiminez | Code 112, Possession of Alcohol |
| Oscar Contreras-Aguilar | Code 224, Assault |
| Steven Grovo | Code 201, Fighting |
| Juan Ledesma | Codes 201 and 104 |
| Franklin Robinson | Code Stalking |
| L. Andrews | Code Stalking |
| Chanze Pringler | Code 224 Assault |
| Benjamin Caudillo | Code 224 Assault |
| Nicole Johnson | Code 409 |
| Michael King | Code 111 - Introduction of Drugs |

These examples are illustrative, but not meant to be an exhaustive list.

3. Pattern and Practice:

The BOP as an agency has engaged in a pattern and practice of retaliation nationwide. As an agency BOP has been repeatedly put on notice of this pattern practice and culture of retaliation as exhibited by the following examples:

a- Turner Class Action: a certified class of BOP staff

14

who allege that, from January 1, 1994 to May 11, 2022 they were denied promotions based on BOP's practice of retaliating against employees who engaged in protected Title VII EEO activities (█████████████████).

b. Union Complaints of Dangerous Working conditions (Att. B, hereto) at a facility known to retaliate against staff for protected activities. (████████)

C. Misleading federal Judges (███████) and failing to comply with federal Judges. (Id.)

D. Retaliating against Female federal inmates who were sexually abused by staff, and allowing those staff to retire rather than to face criminal prosecution. (████████)

E. Retaliating against Female staff who were sexually abused by inmates, which then settled for $20,000,000.00 (████████)

F. USP Tucson SIA Alphonso Mendez, responsible for "investigating inmate misconduct, evaluating security needs" was criminally prosecuted in the district court and sentenced by Judge James

A. Soto for false statements made in retaliation during an investigation. Mendez also paid inmates to make up fictitious allegations against inmates such as plaintiff he targeted for protected activities (See, e.g. Testimony of Christopher Coodress in Benson v. Unknown Party, No. 13-CV-2059-DCB (D. Ariz.))

G. Congress itself has found a widespread culture of retaliation in 2 reports from 2019 and 2022.

In addition to the aforegoing examples, plaintiff was subject to repeated transfers that used false statements by BOP staff. On Mar. 30, 2020 Asst. Warden Michael Segal signed a 3-page "Memorandum For BOP Transgender Executive Council" that contained a multitude of false and/or misleading statements ("the Memo"):

1. On Jan. 17, 2020 plaintiff was assaulted and placed in SHU after being hospitalized for her injuries, as a result she could not complete the Challenge Program. The memo however, stated "he was not able to make any ~~proper~~ significant progress in the Challenge Program due to his egregious behavior resulting in multiple investigations and repetitive SHU placements.

2. An "investigative report dated Jan. 23, 2020
concluded... he poses a threat to the safety
and orderly running of the institution" In
addition to misgendering plaintiff, the Memo
claimed Plaintiff posed the threat, yet in a
Response to a Habeas Petition in Case No. 20-
CV-00071-RM before this Court BOP claimed
it was "primarily for the purpose of protecting
her from other inmates" (id. at Doc. 19)

3. The Memos claimed "Pinson was assaulted for
making disrespectful comments" yet the SIS
Investigation had concluded previously she had
been the victim of a sanctioned "hit" not for
any "disrespectful comments" which plaintiff
never made.

4. The Memo claimed a "June 17, 2019" threat
assessment "was initiated due to inmate
Pinson sending emails of threatening to kill
people" and "told two other inmates" she
"would kill the Psychologist" when neither
had actually occurred.

5. The Memo claimed on April 20, 2019 plaintiff
"made false PREA allegations against" inmate

Rufus Hall. Plaintiff never made any PREA allegation against Hall.

16. The Memo, and its false/misleading statements, was then circulated to BOP's National Policy Program Coordinator Kerri Pistro, Anil D. Gonzales, Clinical Director Heidi Haight-Biehler, Sharon Bass USP Tucson HSA, Chief Psychologist James Hayden and Unit Manager Erica Lara.

After authoring the Memo, Acting Warden Segal would then file a declaration under penalty of perjury in Case No. 20-CV-00169-RM before this Court stating that due to "threat assessments which determined that inmate Pinson could not be safely housed in USP Tucson's general population she was approved for transfer (id, Doc. 120, Ex A) instead of "his egregious behavior resulting in multiple investigations and repetitive SHU placements that was the Memo's claim to BOP's DSCC and TEC.

At the same time as plaintiff's Form 409 Transfer Request, Warden Gutierrez submitted a Form 409 for Zaragosa-Solis. Gutierrez claimed Zaragosa-Solis "engaged in repeated institutional misconduct while housed at USP Tucson" and "as a result of his frequent offenses" he "requires close supervision and should be transferred"

18

(See Doc. 28 at 2 in Case No. 22-CV-00498-JGN (D. Ariz.)). In support of that claim, Gutierrez has submitted a Declaration under penalty of perjury from Lorri Mitchell a Legal Assistant at USP Tucson listing 17 disciplinary offenses. The natural conclusion one would reach from the language used is that Zaragosa-Solis committed 17 offenses "While at USP Tucson" and therefore needed a Code 323 transfer. But Gutierrez omitted from both the Form 409 to DSCC, like in his Court filing, important details in order to mislead. First, when inmates go to the SHU for discipline offenses under BOP Program Statement 5270.11 and 28 C.F.R. 541.22(b) an inmate in SHU for an "investigation or awaiting a hearing for possibly violating a Bureau regulation (541.23(c)(1)) is released from SHU "when the reasons for your placement no longer exist" (28 C.F.R. 541.33(a)). Zaragosa-Solis had indeed been placed in SHU on 5-18-22 at 18:53 hrs for a disciplinary charge, was found Guilty of a Code 400 on 6-2-22, and pursuant to 28 C.F.R. 541.33(a) was released on that charge to general population and has never received a disciplinary charge since, before or after Sept. 14, 2022 when Brown attacked him, yet Gutierrez persisted with h[is]

plan to mislead the DSCC and this Court by claiming Zaragosa-Solis "while at USP Tucson" had "engaged in repeated institutional misconduct" and needed to be transferred "as a result of his frequent misconduct, when he knew the truth was that Zaragosa-Solis was put in SHU Sept. 14, 2022 as the victim of assault, had no pending or unexpired disciplinary offenses or sanctions, and was only submitted by Gutierrez for transfer via form 409 on the same day as Pinson] for refusing to drop all civil claims as he'd demanded Oct. 5, 2022 of Plaintiff, Zaragosa-Solis and the other Brown victims. Not for the 17 offenses claimed by Mitchell, many of which were committed during 2 prior discharged prison sentences in other BOP facilities, neither detail of which Gutierrez supplied DSCC or this Court.

20

Gender Confirmation Surgery ("GCS") cannot be obtained under BOP's policies and practices systemwide unless and until a transgender inmate has met all 3 of the aforegoing eligibility requirements.

Under existing policy (and prior policies) no cisgender inmates medical procedures are tied to custody or security levels as eligibility requirements, only those of transgender inmates are treated as such.

2. The Plaintiff:

The plaintiff is diagnosed with Gender Dysphoria. She experiences severe and chronic depression, anxiety and suicidal thoughts. The plaintiff has attempted suicide requiring emergency hospitalization for near-lethal acts of self-harm, more than a dozen times since 2010 while in BOP custody.

The plaintiff has long-hair and well-developed breast tissue and a feminine appearance. Her Gender Dysphoria "Diagnostic Formulation" in BOP's Electronic Records has the _____ description

4) A strong desire to be of the other gender (i.e., Ms. Pinson refers to herself as "G__ld Adults:
wearing make-up, and has submitted requests for gender reaffirming surgery)
5) A strong desire to be treated as the other gender (i.e., she identifies as "Grace," p___ristics
and requested staff female pat searches only)
6) A strong conviction that one has the typical feelings and reactions of the other gen___ marked incongruence with one's
her through hormone treatment, her feelings and reactions have not been as extreme __ed gender reaffirming surgery;
personality has been the result of identifying and living as a female)

2

Count II (Statement of Facts Cont'd.):

As a preliminary matter, plaintiff models her facts in accordance with the test outlined in Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006):

1. Gender Dysphoria Policy:

In Dec. 2016 the BOP enacted its "Medical Management of Transgender Inmates, Clinical Guide" which "provides recommendations for the medical management and treatment of transgender federal inmates, referred to" and recognizes that Gender Confirmation Surgery "may be appropriate for some."

BOP's Transgender Executive Council ("TEC") makes initial recommendations for surgery to the BOP Medical Director.

The BOP developed the "Transgender Offender Manual" ("Manual") which lists the following assessments TEC must consider to authorize transfer of a transgender woman inmate to a female facility:

1. live in a female facility for 12 months;
2. achieve low-security level to be transferred to a female facility;
3. Maintain 12-months clear conduct.

21

he following DSM 5 criteria for Gender Dysphoria in Adolescents are," she is frequently observed

gruence between one's experienced gender and primary sex charac ers the use of female pronouns,
e to rid of one's primary and/or secondary sex characteristics due to a r
ressed gender (e.g., documented desire to remove her own testicles)    (i.e., Ms. Pinson asserts that
re for the primary sex characteristics of the other gender (i.e., has reque nd that part of the change in her
hormones and has developed breast tissue)

On Sept. 16, 2019 J. Jusino, Warden designee
signed and submitted a "Memorandum For BOP
Transgender Executive Council" stating, inter alia,
the following:

"This is a request for review of inmate Pinson's
request for gender-affirming surgery and considera
for redesignation to a lesser-security facility (
                        . It continued, "Due to the len
of the remaining Sentence, we are requesting trans
consideration to a lesser security institution which
can accomodate Medical Care Level 2 and Ment
Health Care Level 3 Inmates. This will allow
inmate Pinson forward progression towards
goal of meeting the condition of full-time, re
life experience in the preferred Gender" (
It concluded with, "We are also seeking guid
for progression to the next phase, in the s
redesignation to a lesser security institution
not approved" (id).

On Oct. 10, 2019 the BOP's National Poli

Program Coordinator for the Women and Special Population Branch, Kerri Pistro, sent an email to then-USP Tucson Warden Barbara von Blanckensee and BOP Assistant Director Andre Matevousian in BOP's Headquarters in Washington, D.C. that stated:

"The TEC reviewed IM. Pinson's case and the following recommendations were made:

- Continue placement at TCN;
- Continue to monitor hormones; and
- provide appropriate gender-affirming accommodations.

If you have questions, please let me know."

( ██████ 10-10-19 TEC Email)

or about Oct. 23, 2019 plaintiff was released to the eral population at USP Tucson. On or about Dec. 16, plaintiff was assaulted by a cisgender male inmate placed into the SHU. After being released to the tal population on Jan. 14, 2020 she was assaulted a cond-time by a cisgender male inmate resulting in us injuries and emergency hospitalization. She placed into SHU upon return from the hospital e she remained until her transfer on Dec. 4, 2020

in SHU plaintiff repeatedly cut herself on multiple

24

occasions, including attempts at auto castration.
Plaintiff sought "gender-affirming accommodations"
as the TEC recommended to the Warden, through
the Administrative Remedy Program first to the
USP Tucson Warden, then the Regional Director
and finally the BOP Central Office (████████
Central Office Appeal) but received nothing from
BOP. ██████████████████ SP-9 Request to Warden
Blanckensee).

BOP consistently refuses to provide plaintiff with any
access to female clothing, hygeine, makeup, the ability
to remove facial hair, or even to brush her own hair.
As of this Complaint, it continues to be withheld
from plaintiff.

After the assaults, on Mar. 30, 2020 a "Memorandum
For BOP Transgender Executive Council" was signed
and submitted as described in Count I by Acting
Warden Michael Segal stating, inter alia, "This
is a request to review inmate Pinson for re-designation
to an appropriate HIGH security facility in order to
continue with his programming needs." In addition
to misgendering her and all the false statements
and misrepresentations in Count I herein, the memo
also claimed "Inmate Pinson has not been referred

25

to medical for evaluation or any treatments". The men referred to plaintiff as "He" or "His" or "Him" or "Himself" approximately 35 times, including a claim of her being misgendered by "Ms. Erika Schmitt, Mental Health Treatment Coordinator, Central Office".

As indicated in Count I, BOP designated plaintiff to a High Security U.S. Penitentiary in Coleman, FL based upon the Mar. 30, 2020 Memo. The Memo did not indicate plaintiff's desire for GCS nor did it mention her repeated requests to be housed in a women's facility at all.

Upon arrival to the cisgender male facility in Florida the plaintiff was sexually assaulted by a black muslim which a PREA investigation substantiated, and shortly thereafter she was struck in the head with a combination lock in a sock by a hispanic cisgender male inmate, at which point she was housed in SHU until her transfer to USP Tucson on June 3, 2022. Plaintiff continued to request GCS and to be housed in a women's facility, her requests continued to be denied by the BOP.

Plaintiff sought protection from a sexual predator, Tyrone Brown, by filing a PREA complaint as described in Count I, and also as described in Count I was put

26

into the SHU on Sept. 14, 2022 where she remains now. The plaintiff has continued to request ECS as well as housing in a women's facility. These requests have continued to be denied by BOP without explanation of a medical reason, the reason cited continues to be plaintiff's security and custody level.

In an attempt to meet BOP at some compromise, plaintiff requested transition to a lesser security facility and was informed she is instead awaiting transfer to a greater security and custody setting the "Secure Admin Unit" at Allenwood, PA.

The plaintiff has felt severe depression and anxiety in SHU. She was provided razor blades in multiple disposable razors by SHU Officers despite their being prohibited in SHU. Since Oct. 2022 the plaintiff has lacerated herself 9 separate times using those razors in acts of self-harm in a state of despair. The plaintiff frequently thinks of suicide since she has been housed in the SHU.