GARY M. RESTAINO
United States Attorney
District of Arizona
KAITLIN S. HOLLYWOOD
Assistant U.S. Attorney
405 W. Congress Street, Suite 4800
Tucson, Arizona  85701-5040
Telephone:  (520) 620-7300
Civil fax: (520) 620-7149
e-mail:  kaitlin.hollywood@usdoj.gov
*Attorneys for Defendant United States of America*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeremy Pinson, | **CV 23-00442-TUC-RM** |
| Plaintiff, | **MOTION TO PARTIALLY DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION** |
| vs. | |
| Federal Bureau of Prisons, et al., | |
| Defendants. | |

Defendant United States of America, pursuant to Fed. R. Civ. P. 12(b)(1), moves to partially dismiss Plaintiff Jeremy Pinson's First Amended Complaint (Doc. 12) for lack of subject-matter jurisdiction.[1] Count I fails in its entirety for lack of standing.  Count III is subject to partial dismissal to the extent Plaintiff pursues constitutional violations or

---

[1] Because the Defendant is filing a pre-answer motion to dismiss under Rule 12, Fed. R. Civ. P., it is not required to file an answer until this Court rules on its instant motion.  Fed. R. Civ. P. 12(a)(4)(A)-(B); *see Sorenson v. Basian*, No. CV-21-08121-PCT-JJT, 2022 WL 523319, at *3 (D. Ariz. Feb. 22, 2022) ("When a pre-answer motion is filed under Rule 12, the defendant is not required to file an answer until the Court rules on the motion."). Thus, the Defendant's time to respond to the remaining claims in Plaintiff's First Amended Complaint is tolled under Rule 12(a)(4). *See Sorenson*, 2022 WL 523319, at *3; *see also Tenser v. Ryan*, No. CV19-05496 VBF (RAO), 2020 WL 4760192, at *4 (C.D. Cal. May 26, 2020); *ThermoLife Int'l, LLC v. Gaspari Nutrition, Inc.*, No. CV 11-01056-PHX-NVW, 2011 WL 6296833, at *5 (D. Ariz. Dec. 16, 2011) ("[E]ven though a pending motion to dismiss may only address some of the claims alleged, the motion to dismiss tolls the time to respond to all claims."); *Hunt v. San Diego Police Officer Spears*, Civil No. 07cv355-BEN (CAB), 2008 WL 1832210, at *1 (S.D. Cal. April 23, 2008) (rejecting Plaintiff's argument that defendants should be held in default, explaining an answer "would have been premature" because defendants' motion to dismiss was pending).

1  injunctive relief under the FTCA.  Defendant's motion is supported by the following
2  Memorandum of Points and Authorities.

3                    **MEMORANDUM OF POINTS AND AUTHORITIES**

4  **I.     BACKGROUND**

5           Plaintiff[2] claims that in September 2022 and while housed at the United States
6  Penitentiary in Tucson ("USP-Tucson"), she was attacked by another inmate and that she,
7  along with several other inmates involved in the altercation, were placed in the Special
8  Housing Unit ("SHU") under administrative detention pending an investigation of the
9  attack.  (Doc. 7 at 7.)  Plaintiff alleges that on October 5, 2022, the investigator, Lt.
10 Christensen, presented an ultimatum to "drop" all civil claims against USP-Tucson staff
11 and the [Bureau of Prisons ("BOP")] or stay in the SHU and be transferred.  (*Id.* at 7–8.).
12 Plaintiff claims that this "threat" was "echoed" by Warden Gutierrez.  (*Id.* at 8.)  She alleges
13 that the inmates who agreed to not pursue civil claims were released back to "general
14 population" and those, like herself, who declined to "drop" their civil claims were kept in
15 the SHU and transferred.  (*Id.* at 9.)

16          On January 3, 2023, Plaintiff filed this Civil Rights Complaint in the Eastern District
17 of California.  (Doc. 1.)  That court issued a screening order pursuant to 28 U.S.C. § 1915A
18 dismissing the complaint and giving Plaintiff 30 days to file an amended complaint
19 correcting the deficiencies in the original complaint.  (Doc. 5.)  On April 24, 2023, Plaintiff
20 filed her First Amended Complaint (Doc. 7) and a motion for a preliminary injunction
21 (Doc. 8).  The Eastern District of California then transferred the case to this Court to
22 determine if some or all of Plaintiff's claims in the instant case were duplicative of claims
23 in another case currently pending before it: *Pinson v. Carvajal et al.*, No. CV-22-00298-
24 TUC-RM.

25          This Court issued its screening order on March 15, 2024, in which it denied without
26 prejudice Plaintiff's motion for a preliminary injunction; dismissed Count II of the First

27

28  _____
    [2] Plaintiff identifies as a transgender woman and uses female pronouns.

1  Amended Complaint; dismissed the non-United States defendants; and ordered the United
2  States to answer Counts I and III of the First Amended Complaint.  In Count I, Plaintiff
3  alleges that Tucson officials retaliated against her in violation of her First Amendment
4  rights.  As relief, Plaintiff asks this Court to enter an order "enjoining the widespread
5  culture and practice of retaliation within the BOP systemwide;" and "enjoining plaintiff's
6  housing in segregation or solitary confinement."[3]  In Count III, Plaintiff seeks monetary
7  damages under the Federal Tort Claims Act.

8  **II.   ARGUMENT**

9        **A.   The Court should dismiss Count I for lack of subject matter jurisdiction.**

10              **1. Plaintiff cannot satisfy the first and third requirements for
11  standing, "injury in fact" and "redressability."**

12        This Court lacks subject-matter jurisdiction over Count I of the First Amended
13  Complaint. This Court's judicial power extends only to "cases and controversies of the sort
14  traditionally amenable to, and resolved by, the judicial process." *Steel Co. v. Citizens for a*
15  *Better Env.*, 523 U.S. 83, 102 (1998).  For a case or controversy to exist, a plaintiff must
16  have standing to sue. *Id*. Standing contains three requirements: First, a plaintiff must allege
17  an "injury in fact," which is "a harm suffered by the plaintiff that is concrete and actual or
18  imminent, not conjectural or hypothetical." *Id.* at 103 (internal quotation marks omitted).
19  Second, "there must be causation—a fairly traceable connection between the plaintiff's
20  injury and the complained-of conduct of the defendants." *Id*. Third, "there must be
21  redressability—a likelihood that the requested relief will redress the alleged injury." *Id*.
22  Critical here will be the first and third requirements for standing.

23          **a.  Plaintiff cannot establish injury in fact.**

24        Where, as here, a plaintiff pursues prospective relief, "[p]ast wrongs are not enough"
25  to demonstrate injury in fact. *Enrico's Inc. v. Rice*, 730 F.2d 1250, 1253 (9th Cir. 1984).

26

27  [3] Plaintiff's remaining requests are either moot based on her transfer to USP-Allenwood
28  (as already found by this Court in its screening order), directed at the dismissed Count II,
or directed at the harms alleged in Count III.  (Doc. 7 at 6; Doc. 18 at 3, 4–6.)

1    Rather, a plaintiff must show that she is "in danger of sustaining some direct injury," and

2    that the "threat of injury" is "both 'real and immediate,' not 'conjectural' or

3    'hypothetical.'"  *City of L.A. v. Lyons*, 461 U.S. 95, 101–02 (1983).  The plaintiff cannot

4    rely on allegations about past events.  After all, "[p]ast exposure to illegal conduct does not

5    in itself show a present case or controversy . . . if unaccompanied by any continuing, present

6    adverse effect." *See id*. at 102.

7         *Lyons* illustrates the point.  In *Lyons*, the plaintiff sought injunctive relief against

8    the City of Los Angeles after four police officers "seized [him] and applied a

9    'chokehold'—either the 'bar arm control' hold or the 'carotid-artery control' hold or

10   both—rendering him unconscious and causing damage to his larynx." *Id*. at 97–98. He

11   sought an "injunction against the City barring the use of those control holds." *Id*. at 98. The

12   question was whether he had standing to bring that claim for injunctive relief. The Court

13   held that he did not. *See id.* at 105. "That Lyons may have been illegally choked by the

14   police [before]," the Court reasoned, did "nothing to establish a real and immediate threat

15   that he would again be stopped . . . by an officer or officers who would illegally choke

16   him." *Id*. His allegation that police "routinely appl[ied] chokeholds in situations where they

17   [were] not threatened by the use of deadly force" fell far short of what would be necessary

18   to establish a true case or controversy. *Id*. "Absent a sufficient likelihood that he [would]

19   again be wronged in a similar way," the Court emphasized later in the opinion, "Lyons

20   [was] no more entitled to an injunction than any other citizen of Los Angeles." *Id*. at 111.

21   "[A] federal court may not entertain a claim by any or all citizens who no more than assert

22   that certain practices of law enforcement officers are unconstitutional." *Id*.

23        *Lyons* is on all fours with the allegations in this case.  Plaintiff's allegations are all

24   about past wrongs or "past exposure to illegal conduct," *Lyons*, 461 U.S. at 102.  Plaintiff

25   alleges that USP-Tucson prison officials retaliated against the exercise of her First

26   Amendment rights by keeping her in SHU and requesting her transfer after she refused to

27   voluntarily dismiss her civil cases against BOP.  But to satisfy the first requirement of

28   standing, Plaintiff must plead that she remains under a "threat of injury" that is "both 'real

1   and immediate,' not 'conjectural' or 'hypothetical.'" *Id.* at 101–02. Plaintiff has not, and
2   cannot, plead such an allegation here.  Rather, Plaintiff has been transferred to USP-
3   Allenwood in White Deer, Pennsylvania.  (Docs. 16 & 17.)  She is no longer under the
4   purview of the decisions of the USP-Tucson prison officials and she cannot claim to be
5   continually injured by their actions.  Put another way, because Plaintiff is no longer housed
6   at USP-Tucson, there is not a "sufficient likelihood" that those specific prison officials will
7   house her in the USP-Tucson SHU and request her transfer in the future, violating the First
8   Amendment in the process.  *See id.* at 111. Because Plaintiff's allegations do not set forth
9   a "likelihood of substantial or immediate irreparable injury," this Court should decline her
10  invitation to get involved in the prison's affairs, as other courts in this district have done in
11  similar circumstances.  *See, e.g., Vanaman v. McLaughlin*, No. CV-17-0-446-TUC-JGZ,
12  2020 U.S. Dist. LEXIS 87587, *8 (D. Ariz. March 15, 2020) (dismissing retaliation action
13  for lack of standing under *Lyons* where plaintiff failed to plead he was in immediately in
14  danger of sustaining some direct injury that was not conjectural or hypothetical).

15       It is especially important for a plaintiff to show a "likelihood of substantial or
16  immediate irreparable injury" when federalism or separation-of-powers principles are
17  concerned, as in this case where Plaintiff seeks injunctive relief against the BOP. *See*
18  *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1042-43 (9th Cir. 1999). The role of federal
19  courts is "to remedy past or imminent official interference with individual inmates'
20  presentation of claims to the courts." *See id.* at 1043 (quoting *Lewis v. Casey*, 518 U.S.
21  343, 349-50 (1996)). The role of the political branches of government, on the other hand,
22  is "to manage prisons in such fashion that official interference with the presentation of
23  claims will not occur." *Id*. (quoting *Lewis*, 518 U.S. at 349-50). "The distinction between
24  the two roles would be obliterated if, to invoke intervention of the courts, no actual or
25  imminent harm were needed, but merely status of being subject to a governmental
26  institution that was not organized or managed properly." *Id*. (quoting *Lewis*, 518 U.S. at
27  349-50).  In *Hodgers-Durgin*, the Ninth Circuit, following those principles, rejected two
28  Arizona residents' claim for injunctive relief challenging Border Patrol policies.  *See id.* at

1044. "In the absence of a likelihood of injury to the named plaintiffs," the en banc court stressed, "there is no basis for granting injunctive relief that would restructure the operations of the Border Patrol and that would require ongoing judicial supervision of an agency normally, and properly, overseen by the executive branch." *Id*.

Accordingly, for this reason alone, the Court should dismiss Count I of Plaintiff's amended complaint. *See Vanaman*, 2020 U.S. Dist. LEXIS 87587, *8–9.

**b.  Plaintiff cannot establish redressability.**

In order to meet the third requirement for standing, redressability, the prospective relief sought by the plaintiff must "remedy the injury suffered." *Steel Co.*, 523 U.S. at 107. It must "serve to reimburse" the plaintiff or "to eliminate any effects" of the defendants' illegal conduct. *See id.* at 105-06. It is not sufficient for purposes of Article III if a plaintiff's claim for injunctive relief is merely "aimed at deterring" the defendant from future illegal conduct. *Id*. at 108. If "[n]othing supports the requested injunctive relief except [the plaintiff's] generalized interest in deterrence," no case or controversy exists. *See id.* at 108-09. In other words, "[f]or the purposes of requesting injunctive relief, a party does not have standing unless it is able to show a 'real or immediate threat that [it] will be wronged again.'" *Hightower v. City & Cnty. of S.F.,* 77 F. Supp. 3d 867, 886 (N.D. Cal. 2014) (citation omitted). Thus, a "plaintiff who seeks injunctive relief satisfies the requirement of redressability by alleging a continuing violation." *Nat. Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 995 (9th Cir. 2000).

Redressability is often related to mootness. *See Doe No. 1 v. Reed*, 697 F.3d 1235, 1238 (9th Cir. 2012) ("The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted."). "The requisite personal interest that must exist at the commencement of the litigation (standing) must continue through its existence (mootness)." *Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003) (quoting *Cook Inlet Treaty Tribes v. Shalala*, 166 F.3d 986, 989 (9th Cir. 1999)). Thus, if the damage is done—as it was in *Doe No. 1* or *Foster*—or if circumstances change that prevent a court from granting effective relief—like in *Cook Inlet Treaty Tribes*—the case

1   no longer has "redressability." *See Doe No. 1*, 697 F.3d at 1239 (plaintiff's request to keep

2   certain public records sealed was mooted because the records had already been disclosed);

3   *Foster*, 347 F.3d at 746 (plaintiff's challenge to Oregon's four-month deferral of certain

4   criminal proceedings was moot because the deferral was over); *Cook Inlet Treaty Tribes*,

5   166 F.3d at 989 (Congressional Act resolved the underlying dispute between the parties

6   and mooted the case).  In such cases, the plaintiffs could no longer obtain effective relief,

7   and the courts therefore lacked subject-matter jurisdiction.

8         The relief Plaintiff seeks here is improper and not available under Fed. R. Civ. P.

9   65, as explained further in Part II.A.2, below.  Plaintiff's request to enjoin BOP from

10  retaliating against prisoners for exercising their First Amendment rights or to enjoin BOP

11  from placing Plaintiff in segregated or solitary confinement (Doc. 7 at 7) cannot impact the

12  past allegedly illegal action of USP-Tucson officers, because Plaintiff is no longer housed

13  at USP-Tucson.  *See, e.g. Fisk v. Bd. of Trustees of California State Univ.*, No. 22-CV-173

14  TWR (MSB), 2023 WL 2919317, at *13 (S.D. Cal. Apr. 12, 2023), modified on

15  reconsideration, No. 22-CV-173 TWR (MSB), 2023 WL 6585821 (S.D. Cal. Oct. 10,

16  2023) (plaintiffs lacked standing on claim of sex discrimination because their requested

17  injunctive relief would not redress their injury since injunction barring discrimination

18  based on sex "would not give the rowing team Plaintiffs the chance to compete for any

19  more money since the team no longer exists and these Plaintiffs' financial aid packages are

20  already locked in through their graduation dates.").

21        This defect is not curable by amendment.  Even if Plaintiff were to plead a possible

22  chain of future events similar to those alleged to have occurred here, it would be far too

23  speculative and hypothetical to confer standing.  Claims predicated upon such "speculative

24  contingencies afford no basis for finding the existence of a continuing controversy as

25  required by article III." *Lee v. Schmidt-Wenzel*, 766 F.2d 1387, 1390 (9th Cir.1985); *see*

26  *Associated Gen. Contractors of Cal., Inc. v. Coalition for Econ. Equity*, 950 F.2d 1401,

27  1407 (9th Cir.1991) (future injury too speculative to confer standing where record provides

28  little indication that the plaintiffs had firm intentions to "take action that would trigger the

1   challenged governmental action" or that if they did, "they would be subjected to the

2   challenged governmental action").

3       Because Plaintiff cannot establish the first and third requirements for standing, this

4   Court lacks subject-matter jurisdiction over Count I of her First Amended Complaint. *See*

5   *Vanaman*, 2020 U.S. Dist. LEXIS 87587, *8–9 (dismissing prisoner's complaint for lack

6   of standing where prisoner plaintiff could not show that alleged past retaliation gave rise

7   to real and immediate threat of future harm which could be redressed by court action).

8       **2. The Court should dismiss Count I because the prospective relief
       Plaintiff seeks is improper.**

9

10      The Court should also dismiss Count I because the relief Plaintiff seeks is improper.

11   Injunctive relief "is a drastic and extraordinary remedy." *Monsanto Co. v. Geertson Seed*

12   *Farms*, 561 U.S. 139, 165–66 (2010); *see also McCormack v. Hiedeman*, 694 F.3d 1004,

13   1019 (9th Cir. 2012).   When issued, it "must be tailored to remedy the specific harm

14   alleged." *Id*. Indeed, the terms of an injunction must be stated specifically, describing "in

15   reasonable detail—and not by referring to the complaint or other documents—the act or

16   acts restrained or required." *See* Fed. R. Civ. P. 65(d)(1)(B) and (C).   These "are no mere

17   technical requirements." *Fortyune v. Am. Multi-Cinema Inc.*, 364 F.3d 1075, 1087 (9th Cir.

18   2004) (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974)). The specificity

19   requirements serve "to prevent uncertainty and confusion on the part of those faced with

20   injunctive orders, and to avoid the possible founding of a contempt citation on a degree too

21   vague to be understood." *Id*. "[A]n ordinary person reading the court's order should be able

22   to ascertain from the document itself exactly what conduct is prohibited." *Columbia*

23   *Pictures Indus. Inc. v. Fung*, 710 F.3d 1020, 1047–48 (9th Cir. 2013) (quoting 11A Charles

24   A. Wright et al., *Federal Practice & Procedure* § 2955 (2d ed.)). When a plaintiff seeks

25   injunctive relief that is too broad and vague to be enforceable, and no other appropriate

26   relief is available, a court should dismiss the complaint. *Mote v. FBI*, 2007 WL 4592080,

27   *3 (C.D. Ill. Dec. 28, 2007) (recommending dismissal because plaintiff's request for

28   injunctive relief too vague and broad to be enforceable and he sought no other appropriate

1   relief); *see also J.P. v. Cnty. of Alameda*, 2018 WL 1933387, *8 N.D. Cal. April 24, 2018)

2   (dismissing the plaintiff's claim for injunctive relief with leave to amend); *Burton v. City*

3   *of Belle Grande*, 178 F.3d 1175, 1201 (11th Cir. 1999) (dismissing plaintiff's Voting

4   Rights Act claims because the injunction they sought was too broad and vague, and the

5   court could "[]not conceive of an alternative remedy").

6        One type of injunction that is always too broad and vague to be enforceable is an

7   "obey the law" injunction. "Under Rule 65(d), an injunction must be more specific than a

8   simple command that the defendant obey the law." *S.C. Johnson & Son Inc. v. Clorox Co.*,

9   241 F.3d 232, 240 (2d. Cir. 2001); *see also MGM Studios Inc. v. Grokster Ltd.*, 518

10  F.Supp.2d. 1197, 1226 (C.D. Cal. 2007) (quoting *Mulcahy v. Cheetah Learning LLC*, 386

11  F.3d 849, 852 n.1 (8th Cir. 2004)) (explaining that "blanket injunctions to obey the law are

12  disfavored"). Applying that rule in a civil rights case against the City of Oakland, for

13  example, the Central District of California rejected proposed injunctions "stat[ing] that

14  Defendants are permitted to make only lawful arrests" and barring officers "from

15  interfering with Plaintiffs' free speech rights." *See Cuviello v. City of Oakland*, 2009 WL

16  734676, *3 (N.D. Cal. March 19, 2009). Similarly, the Eleventh Circuit has rejected a

17  request "to enjoin the City from discrimination on the basis of race in its annexation

18  decisions." *Burton*, 178 F.3d at 1201. Courts are "incapable of enforcing so broad and

19  vague an injunction." *Id*.

20       Another type of vague and overly broad injunction is one that prohibits a party from

21  engaging in lawful activity. This follows from the rule that "[i]njunctive relief should be

22  no more burdensome to the defendant than necessary to provide complete relief to the

23  plaintiffs before the court." *Columbia Pictures*, 710 F.3d at 1049. Thus, although "federal

24  courts have the equitable power to enjoin otherwise lawful activity . . . , this power is not

25  often necessary or appropriate." *U.S. v. Holtzman*, 762 F.2d 720, 726 (9th Cir. 1985).

26  Adhering to that principle, the Ninth Circuit, in a copyright case, rejected an injunction

27  prohibiting the defendant "from seeking legitimate employment." *Columbia Pictures*, 710

28  F.3d at 1049. And the Tenth Circuit, in an Americans with Disabilities Act case, rejected

1    an injunction that barred the defendant from lawfully reviewing workers' compensation

2    histories. *Garrison v. Baker Hughes Oilfield Operations Inc.*, 287 F.3d 955, 962-63 (10th

3    Cir. 2002).

4          In her request for relief, Plaintiff seeks only vague and overly broad injunctive relief

5    that this Court may not issue under Rule 65.  Although Plaintiff lists five requests for

6    prospective relief, only two survived screening:[4] "[E]njoining the widespread culture and

7    practice of retaliation within the BOP systemwide" and "enjoining plaintiff's housing in

8    segregation or solitary confinement."[5]  (Doc. 7 at 6.)  Both requests fail because they are

9    vague and overly broad and request impermissible relief.

10                • **First Request: Enjoining retaliation within the BOP.**

11         Plaintiff asks this Court to enjoin "the widespread culture and practice of retaliation

12   within the BOP systemwide."  (Doc. 7 at 6.)  That requested injunctive relief is simply too

13   vague and overbroad to comport with Rule 65, Federal Rules of Civil Procedure.  It is

14   nothing more than a command that BOP "obey the law," specifically, an order to prohibit

15   prison officials' from taking adverse action against an inmate for protected activity.  *See,*

16   *e.g.*, *Roman v. MSL Cap., LLC*, No. EDCV172066JGBSPX, 2019 WL 3017765, at *5

17   (C.D. Cal. July 9, 2019), aff'd, 820 F. App'x 592 (9th Cir. 2020) (denying permanent

18   injunction "to prevent future violations of the fair housing laws" because such an "obey

19   the law" injunction is disfavored and at odds with Rule 65(d)"); *see also Mulcahy v.*

20   *Cheetah Learning LLC*, 386 F.3d 849, 852 n. 1 (8th Cir. 2004) ("blanket injunctions to

21

22   [4] This Court's screening order states that, with regard to Count I, Pinson seeks only an
23   "[i]njunction enjoining BOP from continuing to house the mentally ill in segregation or
     solitary confinement at any BOP facility systemwide for longer than 60 days.'" (Doc. 18
24   at 5.)  That request, however, is from Pinson's initial complaint, and not her First Amended
     Complaint which Defendant was ordered to respond to by this Court.  (Doc. 1 at 6; Doc.
25   18 at 5.)  Accordingly, Defendant focuses on the specific requested relief in Pinson's First
     Amended Complaint.  In any event, because that requested relief is nearly identical to the
26   request in her First Amended Complaint, this Court would not be able to issue relief for
     the same reasons discussed below.

27   [5] Although Plaintiff does not specify which requested injunctive relief corresponds with
28   each count of her complaint, only two of those requests can reasonably relate to the alleged
     retaliation in Count I, which is the sole surviving claim for injunctive relief.

1    obey the law are disfavored"); *Burton v. City of Belle Glade*, 178 F.3d 1175, 1200-01 (11th

2    Cir. 1999) (noting that, pursuant to Rule 65(d), "an injunction must contain an operative

3    command capable of enforcement" and that a court is not capable of enforcing "so broad

4    and vague an injunction" that simply requires that one obey the law) (internal quotation

5    marks omitted); *Cuviello v. City of Oakland*, No. C-06-5517 MHP (EMC), 2009 WL

6    734676, at *3 (N.D. Cal. Mar. 19, 2009) (noting "the second provision of the stipulated

7    protective order basically states that Defendants are permitted to make only lawful arrests

8    of Plaintiffs. The third provision states that Defendants are barred from interfering with

9    Plaintiffs' free speech rights.  In essence, both provisions are 'obey the law' injunctions

10   and thus not enforceable."); *MGM Studios, Inc.*, 518 F. Supp. 2d at 1226 (noting

11   "'injunctive relief should be narrowly tailored to fit specific legal violations.' The devil is

12   in the details") (internal citation omitted) (*quoting Waldman Pub. Corp. v. Landoll, Inc.*,

13   43 F.3d 775, 785 (2d Cir. 1994)).

14          Moreover, the request is so broad that is lacks sufficient nexus to Plaintiff's claims

15   alleged in her First Amended Complaint.  "A court's equitable power lies only over the

16   merits of the case or controversy before it." *Pac. Radiation Oncology, L.L.C. v. Queen's*

17   *Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015).  If, instead, "a plaintiff seeks injunctive relief

18   based on claims not pled in the complaint, the court does not have the authority to issue an

19   injunction." *Id.*  A vague and overbroad request to enjoin the BOP from retaliation is not

20   only an impermissible "obey the law" request, but also encompasses claims and issues

21   outside the scope of the alleged retaliation by USP-Tucson officials against Plaintiff for

22   exercising her First Amendment rights.

23          Accordingly, Plaintiff's request for a general injunction that BOP not retaliate

24   against inmates for exercising their First Amendment rights fails.

25                    • **Second Request: Enjoining Plaintiff's housing in segregation**
26                      **or solitary confinement.**

27          Plaintiff's second request that this Court enjoin her housing in segregation or

28   solitary confinement similarly fails.  This request is overly broad and effectively seeks an

1    order prohibiting prison officials from exercising their lawful discretion and pursing their

2    legitimate interest in advancing penological goals.

3        In the Ninth Circuit, "preserving institutional order, discipline, and security are

4    legitimate penological goals." *Howard v. Grierson*, No. 2:19-CV-00749-CDS-EJY, 2024

5    WL 551925, at *4 (D. Nev. Feb. 9, 2024) (citing *Barnett v. Centoni*, 31 F.3d 813, 816 (9th

6    Cir. 1994)); *Mauro v. Arpaio*, 188 F.3d 1054, 1059 (9th Cir. 1999) ("It is beyond question

7    that both jail security and rehabilitation are legitimate penological interests."). Indeed,

8    injunctive relief from alleged retaliatory acts of prison officials requires a prisoner to show

9    that the adverse action "did not reasonably advance a legitimate correctional goal." *Rhodes*

10   *v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). Claims by prisoners that they were

11   retaliated against in violation of their constitutional rights have consistently been rejected

12   by courts where the prison demonstrated that the decision was taken to preserve legitimate

13   penological goals. *See Howard*, 2024 WL 551925, at *4 (prisoner's placement in

14   administrative segregation based on inmates undisputed threats to an officer served

15   legitimate penological goal, thus defeating prisoner's retaliation claim); *Barnett*, 31 F.3d

16   at 816 (summary judgment on prisoner's retaliation claim appropriate where prisoner's

17   reclassification—which prevented his ability to send letters—served penological purpose

18   of maintaining prison discipline). By broadly requesting that she never be placed in

19   segregation or solitary confinement, Plaintiff is asking that this Court improperly prohibit

20   the BOP from advancing its interest in preserving institutional order, imposing discipline,

21   and/or protecting Plaintiff or other inmates. Moreover, as with her first request, this

22   encompasses claims and actions beyond what is claimed in Plaintiff's First Amended

23   Complaint. *See Pac. Radiation Oncology, L.L.C.*, 810 F.3d at 633.

24       Because both of Plaintiff's requests for relief are too vague and broad, and seek

25   inappropriate relief, this Court should dismiss Count I of Plaintiff's First Amended

26   Complaint for this additional reason.

27

28

**B.   The Court lacks jurisdiction over the constitutional claims asserted and injunctive relief requested in Count III.**

"An action can be brought by a party against the United States only to the extent that the Federal Government waives its sovereign immunity." *Blackburn v. United States*, 100 F.3d 1426, 1429 (9th Cir. 1996) (citation omitted).   The Federal Torts Claims Act ("FTCA") is a limited waiver of sovereign immunity that allows plaintiffs to seek damages against the United States for certain torts committed by federal employees.   28 U.S.C. §§ 1346(b), 2674.   That waiver, however, does not extend to tort claims based on alleged constitutional violations.   *See* 28 U.S.C. § 1346(b); *see F.D.I.C. v. Meyer*, 510 U.S. 471, 477–78 (1994) [T]he United States has not rendered itself liable under § 1346(b) for constitutional tort claims."); *Roundtree v. United States*, 40 F.3d 1036, 1038 (9th Cir. 1994) ("United States cannot be sued on the theory that there has been a violation of [plaintiff's] constitutional rights."); *Pereira v. U.S. Postal Serv.*, 964 F.2d 873, 876 (9th Cir. 1992) ("Constitutional torts are, by definition, founded on federal, not state law. Therefore, federal district courts have no jurisdiction over the United States where claims allege constitutional torts.").

In her Complaint, Plaintiff characterizes Count III as a violation of the FTCA based on the prison staff's failure to protect her from a fellow inmate.   (Doc. 7 at 5.)   She seeks, in part, monetary relief based on that claim.   (*Id.* at 7.)   However, in her description of the facts supporting her claim, she states they are the "same as Count I" and refers to the same pages of her supporting documents that explain the underlying facts for the alleged First Amendment violation asserted in Count I.   (*Id.* at 3, 5, 7-20.)

To the extent Pinson is asserting an FTCA claim for the violation of her First Amendment rights, this Court lacks jurisdiction.   Such a claim is not viable under the FTCA.   *See* 28 U.S.C. § 1346(b); *Meyer*, 510 U.S. at 478.   Accordingly, this Court should dismiss any portion of Count III that arises from alleged violations of Plaintiff's First Amendment rights.

The Court should also dismiss any request for injunctive relief arising from Count III, because it lacks jurisdiction to enter it.   *See Westbay Steel, Inc. v. United States*, 970

1   F.2d 648, 651 (9th Cir. 1992).  The FTCA does not waive sovereign immunity for suits

2   seeking injunctive relief, and there is no jurisdiction under the FTCA to award injunctive

3   relief.  *See id.* (holding that the FTCA only provides for monetary damages, not equitable

4   relief); *see also Moon v. Takisaki*, 501 F.2d 389, 390 (9th Cir. 1974).

5   **III.   CONCLUSION**

6          For the foregoing reasons, this Court should dismiss Count I and partially dismiss

7   Count III of Plaintiff's First Amended Complaint for lack of subject matter jurisdiction.

8

9          Respectfully submitted this 4th day of June, 2024.

10                                                      GARY M. RESTAINO
                                                        United States Attorney
11                                                      District of Arizona

12
                                                        *s/Kaitlin S. Hollywood*
13                                                      KAITLIN S. HOLLYWOOD
                                                        Assistant U.S. Attorney
14                                                      *Attorneys for Defendant USA*

15

16
                                   **CERTIFICATE OF SERVICE**
17

18         I hereby certify that on June 4, 2024, I caused a copy of the foregoing to be placed

19  in the U.S. Mail to the following recipients who are not registered users of the Court's

20  CM/ECF notification system:

21

22  Jeremy Pinson
    Reg No. 16267-064
23  USP Allenwood
    P.O. Box 3000
24  White Deer, PA  17887
    *Pro Se Plaintiff*

25

26  *s/M. Parker*

27

28