United States District Court
District of Arizona

Jeremy Pinson,
  Plaintiff,

v.                                    No. 23-CV-00442-RM

United States of America,
  Defendant

## Emergency Motion For a Preliminary Injunction

Comes now the pro se Plaintiff pursuant to Fed. R. Civ. P. 65(a) and seeks emergency preliminary injunctive relief for the reasons set forth herein.

## I. Relevant Facts

This action proceeds upon a First Amended Complaint (Doc. 7) which upon screening this Court permitted a First Amendment Retaliation claim for systemwide injunctive relief (Claim One) and a Federal Tort Claims Act claim for damages from a failure to protect incident at USP Tucson in Sept. 2022. (Claim Three) (hereinafter "FAC" at "Claim One" or "Claim Three"). A Second Amended Complaint was proposed in April 2024 and remains under this Court's screening. ("SAC")(Doc. 22).

In a parallel lawsuit this Court entered a preliminary injunction that relates directly to the facts at issue in this

-1-

Motion. (See Case No. 22-CV-00298-RM at Doc. 115, 146, 233, 236). Following the injunction at Doc. 233 in that case the Plaintiff was reclassified as a Medium/IN security female inmate but continued to be housed first in an all-male U.S. Penitentiary for 22 days and a Medium security all-male Federal Correctional Institution since Nov. 1, 2024. (Ex. 2, Pinson Decl. at 1).

After ten days in general population, Plaintiff and her mother Debora Pinson were targeted for extortion following the release of a news article identifying Plaintiff as the recipient of a $10,000 Judgment. (id. at Att. A; and 4). Plaintiff and her mother identified the extortionist to BOP officials (id. at 4) and her attorneys alerted the Tucson U.S. Attorney's Office. (id.).

Inexplicably BOP officials at FCI El Reno detained only Plaintiff in the Special Housing Unit ("SHU") for a "SIS Threat Assessment" though it was clear what other inmate had used BOP and interstate telephone lines to extort, upon threats of violence both Plaintiff and her mother. (id. at 4-5; Att. B). BOP closed the investigation rapidly and had plaintiff pending transfer in a matter of days (id. at 5).

Plaintiff inquired of FCI El Reno officials why she, rather than her criminally responsible extortionist, was being held in SHU pending the fastest transfer process she had ever witnessed since 2007. (id. at 5). Those officials responded in multiple parts but indicated they wanted "that judge off our backs" and that Plaintiff—unlike her extortionist—was "suing the BOP, suing us really." (id.).

On Nov. 29, 2024 while in SHU Plaintiff reported a PREA allegation against her cellmate asking to be moved immediately. (Id. at 7). BOP staff failed to act, and minutes later her cellmate viciously attacked her with closed fists all over her body until she lie prone on her bed being punched in the face. (Id. at 7). Responding staff deployed a huge amount of Oleoresin Capsicum from an aerosolized canister all over Plaintiff and her attacker inflicting severe and unremitting pain, coughing, respiratory distress and vomiting and refused her a decontamination shower or medical assistance for over 30 minutes while she remained in acute distress. (Id. at 7). Plaintiff's cellmate was a convicted sex offender and her cell lacked (and still lacks) a duress alarm, the very grounds this Court cited in awarding her $10,000 in Case No. 19-CV-00422-RM. (Id. at 7; Att. A). Plaintiff was seriously injured. (Id. at 7).

Other LGBTQIA inmates at FCI El Reno have been the victim of violence and threats of violence by criminal gangs the Warden of FCI El Reno claims he has no power to stop except to identify and transfer LGBTQIA inmates out of this facility. (See id. at 8; Ex. 3, Decl. of Jason Jackson, Reg. No. 09733-509).

## II. Legal Standards

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" Lopez v. Brewer, 680 F.3d 1068, 1072 (9th Cir. 2012)(quoting Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)(per curiam); see Winter v. Nat. Res. Defense Council Inc., 555 U.S.

7, 24 (2008)(citation omitted)("[a] preliminary injunction is an extraordinary remedy never awarded as of right"). Nonetheless, "federal courts must not shrink from their obligation to enforce the constitutional rights of all persons, including prisoners" and must not "allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration." *Porretti v. Dzurenda*, 11 F.4th 1037, 1047 (9th Cir. 2021)(citation omitted).

A Plaintiff seeking a preliminary injunction must show: (1) that she is likely to succeed on the merits; (2) she is likely to suffer irreparable harm absent an injunction (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. When the Government opposes a preliminary injunction, "the third and fourth factors of the preliminary-injunction test – balance of equities and public interest – merge into one inquiry." *Porretti*, 11 F.4th at 1047. The "balance of equities" concerns the burdens or hardships to a prisoner complainant compared with the burden on the government defendants if an injunction is ordered. *Id*. The public interest mostly concerns the injunction's impact on non-parties rather than parties. *Id*.

The Ninth Circuit has articulated an alternate formulation of the *Winter* test referred to as the "serious questions" or "sliding scales" approach: a preliminary injunction is appropriate if a plaintiff can show "serious questions going to the merits" and that "the balance of hardships tips sharply in the plaintiff's favor," and the other two *Winter* factors are satisfied. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011)("the serious questions approach survives *Winter* when applied

4

as part of the four-element Winter test"). Under this 'serious questions' version of the sliding-scale test, the elements of a preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another. Id. at 1135. A mandatory versus a prohibitory injunction is "permissible when 'extreme or very serious damage will result that is not capable of compensation in damages,' and the merits of the case are not 'doubtful.'" Hernandez v. Sessions, 872 F.3d 976, 999 (9th Cir. 2017)(quoting Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 879 (9th Cir. 2009)).

Under the Prison Litigation Reform Act, injunctive relief must be narrowly drawn and be the least intrusive means necessary to correct the harm. 18 U.S.C. 3626(a)(2); see Gilmore v. People of the State of Cal., 220 F.3d 987, 999 (9th Cir. 2000).

## III - Arguments and Authorities

### A - Retaliation

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003). "The reason why such retaliation offends the Constitution is that it threatens to inhibit exercise of the protected right." Crawford-El v. Britton, 523 U.S. 574, 588 n.10 (1998).

The Ninth Circuit has affirmed prisoners' rights to be free from retaliation for protected activities for decades. See, e.g. Vance v. Barrett, 345 F.3d 1083, 1089-94 (9th Cir. 2003)(firing prisoners from their jobs in retaliation for exercising rights was

5

deemed a First Amendment violation); Gomez v. Vernon, 255 F.3d 1118, 1127-30 (9th Cir. 2001)(injunctive relief may remedy First Amendment retaliation); Dannenberg v. Valdez, 338 F.3d 1070, 1072 (9th Cir. 2003)(affirming jury verdict of $6500 compensatory and $2500 punitive damages for retaliation for assisting another prisoner with their litigation; affirming injunction requiring expungement of material related to disciplinary action); Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); Austin v. Terhune, 367 F.3d 1167, 1170-71 (9th Cir. 2004); Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997).

B. <u>Likelihood of Success</u>

Plaintiff testifies that prison officials have complained of the injunctions issued by this Court favoring Plaintiff in Case No. 22-CV-00298-RM (Prison Decl. at 2, 5-6) since it was issued. Staff have questioned out loud "can a federal Judge in Arizona tell me what to do in Indiana? I don't think so" (id. at 6) and with this attitude prison officials have deliberately violated those injunctions (1) by still subjecting her to male staff pat and strip searches (id. at 6) (2) denying her female clothing, undergarments, cosmetic and hygeine items in SHU (id. at 6) (3) using male pronouns deliberately to offend her and disrespect the Court's decision (id. at 6).

The worst of its decisions in reaction to the Court's most recent injunctions is how in response to Doc. 233 in Case No. 22-CV-00298-RM (D. Ariz. Sept. 30, 2024) BOP officials took an injunction that clearly explained "placement in male prisons has negatively affected her mental health, resulted in her being the victim of numerous assaults, and

6

led to multiple suicide attempts" (id. at 2) as well as claims for "threats to safety/failure to protect" (id.) and a finding that the classification process "of female transgender prisoners housed in male institutions violates the Equal Protection Clause" (id.) yet inexplicably designated Plaintiff not to its known "trans-friendly" institutions in Illinois, New Jersey or Florida (Pinson Decl. at 9; Jackson Decl. at 5) but to FCI El Reno where the only transgender inmate to recently enter general population on Oct. 7, 2024 was violently assaulted by white supremacist gangmembers. (id.). The only openly gay inmate in the prison is in SHU due to death threats he received from the same gangs. (id.). Instead of transferring him for his own safety BOP has used its disciplinary process to try to force him to leave the safety of SHU into a general population where he has already been threatened with death if he returns. (id. at 4-7; Att. A, B, C). BOP has refused to transfer him to one of the LGBTQIA-"friendly" facilities in Illinois, Florida or New Jersey for 4 months now while he languishes in SHU and is also aware that he spent 7 months in SHU in FCI Forrest City, AR where he faced an identical threat motivated by homophobic gangs. (id. at 8).

Plaintiff's prosecution of Case No. 22-CV-00298, 19-CV-401, and 19-CV-422 constituted "protected activities" under the First Amendment. Crawford-El, 523 U.S. at 588, n.10 and the Ninth Circuit as well as other Courts have repeatedly held that a prison official's own utterances can form the nexus between a "protected activity" and an "adverse action". (Doc. 9); Bruce v. Ysit, 351 F.3d 1283, 1288-89 (9th Cir. 2003)(citing statement by person who validated plaintiff as a gang member that Plaintiff had

7

"pissed off higher ups"); Hart v. Hairston, 343 F.3d 762, 764 (5th Cir. 2003)(per curiam)(disciplinary charge for allegedly lying in a grievance showed a direct link between complaint and punishment); Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001)(prison staff warned Plaintiff not to disrupt their programs with constitutional challenges and threatened him); Baskerville v. Blot, 224 F.Supp.2d 723, 733 (W.D.N.Y. 2002)(holding evidence that officers made statements suggesting retaliatory motive supported a claim of retaliation).

Circumstantial evidence has been sufficient as well. See, Hines, 108 F.3d at 268; Bennett v. Goord, 343 F.3d 133, 138-39 (2d Cir. 2003)(direct evidence of retaliatory motive is not required where circumstantial evidence is sufficiently compelling); Smith v. Maschner, 899 F.2d 940, 947-49 (10th Cir. 1990).

Suspicious timing of adverse actions can also support a claim. Bruce, 351 F.3d at 1288; Bennett, 343 F.3d at 138-39;

Here, there is a pattern here on this record clearly showing a retaliatory scheme being used against her. In her FAC (Doc. 7) Plaintiff alleged that the USP Tucson Warden in Oct. 2022 threatened that if she didn't stop prosecuting her then pending bench trials she would be kept in SHU and transferred. (Id.). This process is commonly referred to by prison guards and prisoners as "diesel therapy." (Pinson Decl. at 10; Jackson Decl. at 9). Since that time, Plaintiff has been in a continuous loop of SHU, transfer, SHU, transfer, all over the United States - sometimes upon orders of the BOP Director herself according to prison staff who ordered her placed into SHU the day she arrived to her prior prison upon publication of a story in a nationally distributed news magazine. (Pinson Decl. at 11; Att. A). Both times that

8

she was housed in-transit at the Federal Transfer Center she was held on fake "suicide watch" status alone in the medical department by a single lieutenant who openly stated he didn't "care what that Judge says" and that he "will never house [her] with other Mediums" security inmates. (id. at 2). Plaintiff was the only inmate on her aircraft who was housed in such a manner and plaintiff's own psychologist refused to "authorize a fake suicide watch" the second time plaintiff arrived on 10-31-24. (id. at 2).

Now, as an extortionist uses an interstate telephone to make death threats against Plaintiff and her mother, the FCI El Reno Warden holds plaintiff in SHU denying her the visits, email and telephone privileges she would have in general population solely to procure her transfer to "get that Judge off our backs" solely because unlike her extortionist Plaintiff "is suing the BOP, suing us really." (id. at 4-5). As a result of her housing in SHU, a convicted sex offender savagely beat her and caused her exposure to pepper-spray for a prolonged period of pure pain and suffering in a cell with no duress alarm, eerily similar to her prior victimization this Court awarded her damages for. (id. at 7; Att. A).

In sum, there is more than sufficient evidence here to demonstrate a systemwide pattern of retaliation that is deeply rooted in the desires of high and low ranking BOP officials to violate, impede, obstruct and defy the injunctions and Judgments of this Court at Plaintiff's expense. She is likely to succeed on the merits because the evidence is sufficient that a trier of fact could find Plaintiff's adverse treatment has been motivated by staff hostility and

9

resentment towards her success in Court and the resulting bad publicity that has followed her success. See, e.g. Hines, 108 F.3d at 268 (jury could infer retaliatory motive from evidence from prison staff that the plaintiff had a reputation for "whining" and "complaining"); Bruce, 351 F.3d at 1288-89 (staff statement that inmate had "pissed off higher ups"); Mays v. Springborn, 575 F.3d 643, 650 (7th Cir. 2009)(affirming at trial, plaintiff's plausible testimony created a jury question as to retaliatory motive); Muhammad v. Close, 379 F.3d 413, 416-17 (6th Cir. 2004)(affidavit from prisoner having overheard staff tell another officer about the need to "get [Plaintiff's] ass"). Plaintiff has met the first Winter factor.

C. Irreparable Injury

A plaintiff must demonstrate that irreparable injury is "likely in the absence of an injunction." Winter, 555 U.S. at 22; Caribbean Marine Servs. Co. Inc. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988). "There must be a presently existing threat of harm, although injury need not be certain to occur." Villanueva v. Sisto, CIV-S-06-2706-LKK-EFB P, 2008 WL 4467512, at *3 (E.D.Cal. Oct 3, 2008)(citing FDIC v. Garner, 125 F.3d 1272, 1279-80 (9th Cir. 1997)).

Here, BOP has deliberately implemented this Court's injunction by selecting gang-dominated facilities where no LGBTQIA inmate has successfully remained in general population without being assaulted, extorted, terrorized with death threats, while other known LGBTQIA-"friendly" facilities are known to house Trans inmates in much higher numbers safely. In fact BOP also has "dropout yards" where ex-gangmembers are safely housed along with Trans inmates. Plaintiff has been subjected to diesel

10

therapy and now violently assaulted in a manner identical to the circumstances this Court just awarded Plaintiff $10,000 for: being assaulted by a convicted sex offender in a cell with no duress alarm. Emotional stress, depression, psychological distress, and other psychological problems can constitute irreparable injury. See: Doc. 233 in Pinson v. U.S., Case No. 23-cv-00298-RM (D. Ariz. Sept. 30, 2024)(citing Stanley v. Univ. of Southern Cal., 13 F.3d 1313, 1324 n.5 (9th Cir. 1994); Chalk v. U.S. Dist. Ct. Cent. Dist. of Cal. 840 F.2d 701, 709 (9th Cir. 1988); see also Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ., 858 F.3d 1034, 1045-46 (7th Cir. 2017)).

Moreover, "the deprivation of constitutional rights unquestionably constitutes irreparable injury." Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012); see Nelson v. Nat'l Aeronautics & Space Admin., 530 F.3d 865, 882 (9th Cir. 2008).

Plaintiff has met the second Winter factor.

D. Balance of Equities/Public Interest

Courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Winter, 555 U.S. at 24.

The BOP has no legitimate penological interest in moving plaintiff all over the country from one segregated setting to another where plaintiff is being denied visits (Pinson Decl. at 12), email access (id.), telephone access (id.), in conditions that not only violate this Court's injunctions but also have a deleterious impact on Plaintiff's mental health and physical well-being. The actions of BOP officials violate federal law

11

and its own policies. For example, housing her on "fake suicide watches" while in-transit at the OKC Federal Transfer Center to thwart the result of the recent preliminary injunction that led to her reclassification as a medium security prisoner while all other medium security inmates are housed in open units with email and telephone access, 12-hours out of cell time, a basketball court and multiple televisions, whereas Plaintiff is locked in a cell away from all inmates with no access to anything but a mattress, suicide blanket and 3 meals per day she must eat with her fingers. (Ex. 2 at 2). The Court is being asked to enjoin illegal actors using their official-capacity within BOP from continuing to torment and terrorize plaintiff whereas BOP will suffer no harm as a result of her being housed in a safer BOP facility in general population.

Finally, "it is always in the public interest to prevent the violation of a party's constitutional rights." Melendres, 695 F.3d at 1002; United States v. Raines, 362 U.S. 17, 27 (1960) ("there is the highest public interest in the due observance of all the constitutional guarantees"). And the public has an interest in ensuring that the Plaintiff's health is maintained during the pendency of a lawsuit. Farnam v. Walker, 593 F.Supp.2d 1000, 1017 (C.D. Ill. 2009).

### E. PLRA

As stated, the PLRA requires any injunctive relief to be narrowly drawn and the least intrusive necessary to

correct the harm. 18 U.S.C. 3626(a)(2). "The Court can fashion relief that is narrowly drawn by limiting an injunction to BOP's use of procedures to determine Plaintiff's security level and custody classification." Pinson v. Carvajal, Case No. 20-CV-00298-RM (D.Ariz. at Doc. 233; Sept. 30, 2024). Here, plaintiff seeks to enjoin BOP from retaliating against her by deliberately housing her in segregated settings and unsafe facilities when well-known "trans-friendly" settings are equally available for inmates like Plaintiff and her witnesses who are targeted for their sexual orientation or gender identity by predatory criminal gangs that dominate certain BOP facilities like FCI El Reno where most functions of the prison are controlled by gangs, not staff. (Ex. 2 at 8; Ex. 3 at 8-9).

## Conclusion

1. Plaintiff seeks a preliminary injunction enjoining BOP from continuing to house her in a medium security facility other than FCI Mariana, FCI Fairton or FCI Marion, or any other non-"LGBTQ friendly" facilities where transgender inmates have or have had an inability to safely function in general population due to being targeted by criminal gangs (i.e. FCI El Reno);

2. Plaintiff seeks a preliminary injunction enjoining BOP from housing her in the Health Services Department of the Federal Transfer Center in Oklahoma City on false and/or fake suicide watch, dry cell status, or any other status designed to isolate her from general population;

13

3. Plaintiff seeks a preliminary injunction compelling defendant United States of America to initiate and complete a thorough investigation into (a) Plaintiff's allegations of retaliation (b) Plaintiff's allegations of efforts by BOP Executive Staff to thwart, obstruct, impede, undermine or otherwise violations of Doc. 146, 233 or 236 in Case No. 22-CV-00298-RM to retaliate against plaintiff, (c) Plaintiff's allegations in her FAC (Doc. 7) and SAC (Doc. 22) and Motion (Doc. 69), and that said investigation be conducted by the Office of Inspector General pursuant to 5 U.S.C. 403, 404 or 413 at the request of the Court and/or United States Attorney;

4. That the results of the investigation requested above be filed in a final report on the record of this case;

5. Plaintiff seeks a preliminary injunction to protect her witness Jason Jackson from further retaliation and/or endangerment by BOP staff during the pendency of this action.

Respectfully Submitted:

Jeremy Pinson

14

CERTIFICATE OF SERVICE

CASE TITLE: Pinson v. USA

Case No. 23-CV-442-RM

I, Jeremy Pinson, do certify that I am mailing this filing to the Court on the same date as I am mailing it to: AUSA Hollywood on 12-3-24 via United States Mail. I have hand delivered both in an envelope marked as "Legal Mail" with first class postage prepaid and properly addressed to a member of my Unit Team Rother for depositing into the U.S. Postal Mail. I declare that this is true and correct under penalty of perjury pursuant to 28 U.S.C. 1746 on 12-3-24.

/s/ Jeremy Pinson
Jeremy Pinson