**WO**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeremy Pinson, | No. CV-23-00442-TUC-RM |
| Plaintiff, | **ORDER** |
| v. | |
| Federal Bureau of Prisons, et al., | |
| Defendants. | |

Plaintiff Jeremy Pinson, proceeding pro se, sues Defendant United States of America, alleging—in the currently operative First Amended Complaint—violations of the First Amendment and the Federal Tort Claims Act ("FTCA"). (Doc. 7; *see also* Doc. 18.) The following Motions are pending before the Court:

- Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. 22)
- Defendant's Motion to Partially Dismiss First Amended Complaint for Lack of Subject Matter Jurisdiction (Doc. 23)
- Plaintiff's Motion for Issuance of Subpoena and Appointment of Counsel (Doc. 27)
- Debra Pinson's Motion to Intervene and for Permissive Joinder (Doc. 34)
- Defendant's Motion for Clarification Regarding Plaintiff's Proposed Second Amended Complaint (Doc. 36)
- Plaintiff's Motion for Preliminary Injunction and for Appointment of Counsel and Special Master (Doc. 37)

- Plaintiff's Motion for Leave to Conduct Expedited Discovery (Doc. 38)
- Plaintiff's Motion to Strike Response (Doc. 57)
- Plaintiff's Motion for Consideration of GAO Report in Screening Proposed Second Amended Complaint (Doc. 59)
- Plaintiff's Motion for Expedited Decisions on Pending Motions (Doc. 63)
- Plaintiff's Motion to Withdraw Request to Amend (Doc. 67)
- Plaintiff's Motion for Issuance of Order to Show Cause Regarding Access to Courts (Doc. 69)
- Plaintiff's Motion for Leave to File Untimely Reply (Doc. 88)
- Plaintiff's Motion for Leave to File Reply to Responses to Order to Show Cause (Doc. 91)
- Plaintiff's Motion for Order to File Declarations and Motion for Extension of Time to File Replies (Doc. 92)
- Plaintiff's Emergency Motion for a Preliminary Injunction (Doc. 94)
- Defendant's Motion to Strike (Doc. 95)
- Plaintiff's Third Emergency Motion for a Preliminary Injunction (Doc. 96)

The Court will order Defendant to file a third supplemental response to Plaintiff's Motion for Issuance of Order to Show Cause (Doc. 69), and will resolve that Motion after the filing of the third supplemental response. The Court will resolve Plaintiff's Emergency Motions for Preliminary Injunctions (Docs. 94, 96) by separate Order. The Court addresses the other pending Motions below.[1]

## I.    Background

When Plaintiff initiated this action, she[2] was housed in the United States Penitentiary ("USP")-Tucson. (*See* Doc. 1.) On January 11, 2024, Plaintiff filed a

---

[1] On January 10, 2025, Defendant filed a Notice of Conditional Settlement, stating that Plaintiff and Defendant have reached an agreement to resolve this matter, conditional upon approval by the United States Attorney General or his designee. (Doc. 100.) The parties subsequently filed a Joint Status Report, notifying the Court that they have executed a settlement agreement, and the settlement has been submitted for payment. (Doc. 107.) However, the parties have not asked the Court to stay resolution of the pending Motions in light of the settlement.

[2] Plaintiff is transgender and uses female pronouns.

1   Notice of Change of Address, informing the Court that she had been transferred to USP-
2   Allenwood in White Deer, Pennsylvania.  (Doc. 17.)  On March 15, 2024, the Court
3   screened Plaintiff's First Amended Complaint ("FAC") pursuant to 28 U.S.C. §
4   1915A(a), and ordered Defendant United States to answer Counts One and Three.  (Doc.
5   18.)  In Count One, Plaintiff asserts a First Amendment retaliation claim, alleging that
6   Bureau of Prisons ("BOP") employees at USP-Tucson retaliated against her by holding
7   her in the Special Housing Unit ("SHU") and providing false and misleading information
8   to secure her transfer to USP-Allenwood.  (Doc. 7 at 3, 7-20.)  In Count Three, Plaintiff
9   asserts an FTCA claim alleging that USP-Tucson staff failed to protect her from an attack
10  by an inmate named Tyrone Brown and exacerbated the mental and emotional trauma
11  caused by the attack.  (*Id.* at 5, 7-20.)

12      After being transferred to USP-Allenwood, Plaintiff sought leave to file a Second
13  Amended Complaint ("SAC").  (Doc. 22.)  The proposed SAC adds new defendants, a
14  new Fifth Amendment claim alleging that Plaintiff was placed in solitary
15  confinement/segregated housing ("restrictive housing") without due process, and a new
16  hybrid Eighth Amendment/FTCA claim arising from the mental health effects of
17  Plaintiff's long-term placement in restrictive housing.  (Doc. 22-1.)

18      On June 4, 2024, in lieu of filing an Answer, Defendant filed a Motion to Dismiss,
19  arguing that this Court should dismiss Count One of the FAC for lack of subject-matter
20  jurisdiction because Plaintiff cannot establish injury-in-fact and redressability, and
21  because it seeks impermissible relief, and that the Court should partially dismiss Count
22  Three to the extent Plaintiff alleges constitutional violations or seeks injunctive relief.
23  (Doc. 23.)

24      Plaintiff thereafter filed a number of motions related to her confinement in the
25  Secure Administrative Unit ("SAU") at USP-Allenwood.  On July 22, 2024, Plaintiff and
26  her mother, Debra Pinson, filed a Motion to Intervene and for Permissive Joinder,
27  alleging that Debra Pinson's constitutional rights to maintain a relationship with her
28  daughter had been abridged by Plaintiff's placement in the SAU.  (Doc. 34.)  On July 29,

2024, Plaintiff filed a Motion for Preliminary Injunction, seeking to enjoin the BOP from housing her in the SAU or any other restrictive housing units at USP-Allenwood. (Doc. 37.) On August 2, 2024, Plaintiff filed a Motion for Leave to Conduct Expedited Discovery, arguing that she should be allowed to conduct expedited discovery related to her proposed SAC and her Motion for Preliminary Injunction due to irreparable injury that she was experiencing as a result of her confinement in the SAU. (Doc. 38.)

On October 7, 2024, Plaintiff moved to withdraw as moot her Motion for Leave to File SAC, her Motion for Preliminary Injunction, her Motion for Leave to Conduct Expedited Discovery, and Debra Pinson's Motion to Intervene, averring that she had been told she was going to be redesignated to a Reintegration Unit and would no longer be placed in restrictive housing. (Doc. 67.) Instead of being moved to a Reintegration Unit, however, Plaintiff was moved temporarily to the SHU at USP-Terre Haute (Doc. 70; Doc. 72 at 2), and then to the Federal Correctional Institution in El Reno, Oklahoma ("FCI El Reno") (Doc. 78 at 2; Doc. 79; Doc. 82 at 2). Plaintiff was initially placed in the general population unit of FCI El Reno but was moved to the SHU on November 12, 2024. (Doc. 82 at 2.)

While at USP-Terre Haute, Plaintiff filed a Motion for Issuance of Order to Show Cause Regarding Access to Courts, seeking to withdraw her previously filed Motion to Withdraw, and alleging that the Bureau of Prisons had discontinued her medication and was denying her access to legal files and supplies. (Doc. 69.) The Court required Defendant to file an expedited response to the Motion for Issuance of Order to Show Cause. (Doc. 71.) Defendant filed a Response, followed by two Supplements. (Docs. 72, 78, 82.) Plaintiff then filed a flurry of documents related to her confinement at FCI El Reno (Docs. 86, 88, 91, 92. 94, 96), some of which Defendant moved to strike (Doc. 95).

## II.    Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. 22)

Plaintiff seeks leave to amend her complaint to allege violations of the Fifth Amendment (Count Two) and the Eighth Amendment (Count Four), as well as an additional violation of the FTCA (Count Four), and to add as individual defendants Mark

1    Gutierrez, Muhammad Zantout, Christopher Marlow, Ashley Noble, and Stephen
2    Williams.  (Doc. 22; *see also* Doc. 22-1.)  In her proposed SAC, Plaintiff continues to
3    seek $10,000,000.00 against the United States on the FTCA claim in Count Three; she
4    also seeks $25,000,000.00 against the United States on the FTCA portion of Count Four,
5    and $500,000.00 each against the individual defendants.  (Doc. 22-1 at 14-15.)   In
6    addition, Plaintiff seeks injunctive relief enjoining the BOP from placing her in restrictive
7    housing and from retaliating against her for exercising her First Amendment rights.  (*Id.*)

8    ### A.    Legal Standard

9    With the exception of amendments made as a matter of course,[3] a party "may
10   amend its pleading only with the opposing party's written consent or the court's leave."
11   Fed. R. Civ. P. 15(a)(2).  Leave should freely be given "when justice so requires."  *Id.*  In
12   determining whether to grant leave to amend, courts consider the following factors:
13   "undue delay, bad faith or dilatory motive on the part of the movant[;] repeated failure to
14   cure deficiencies by amendments previously allowed[;] undue prejudice to the opposing
15   party by virtue of allowance of the amendment[; and] futility of amendment."  *Eminence*
16   *Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  Futility alone may
17   justify denying leave to amend.  *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).
18   The test for determining futility is the same as the test for determining whether a pleading
19   survives a motion to dismiss under Rule 12(b)(6).  *White v. Relay Res.*, No. C19-0284-
20   JCC, 2019 WL 5677541, at *1 (W.D. Wash. Oct. 31, 2019).   Under that test, "a
21   complaint must contain sufficient factual matter, accepted as true, to state a claim to relief
22   that is plausible on its face," meaning the complaint's factual allegations must "allow[]
23   the court to draw the reasonable inference that the defendant is liable for the misconduct
24   alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).
25   . . . .

26
27   ---
     [3] A party may amend its pleading once as a matter of course within certain timeframes.
28   *See* Fed. R. Civ. P. 15(a)(1).  Plaintiff argues that she may amend as a matter of course
     because this is her first amendment of her own volition; however, she cites no authority
     in support of that proposition, and the text of Rule 15 does not distinguish between
     volitional and non-volitional amendments.

## B. Discussion

Plaintiff's proposed SAC adds factual detail to existing claims and adds new claims and defendants. Although some claims of the proposed SAC fail on screening under 28 U.S.C. § 1915A(a), as discussed below, the proposed amendment is not entirely futile. Furthermore, Plaintiff moved to file the proposed SAC early in this case, before Defendant had answered or otherwise responded to the FAC and prior to the commencement of discovery. Given the timing of the Motion, the Court does not find undue delay, bad faith or dilatory motive on Plaintiff's part, nor does the Court find undue prejudice to Defendant in allowing the amendment. Accordingly, the Court finds that leave to amend under Federal Rule of Civil Procedure 15 is appropriate and will grant Plaintiff's Motion.

## III. Defendant's Motion to Partially Dismiss First Amended Complaint for Lack of Subject Matter Jurisdiction (Doc. 23)

Defendant moves for partial dismissal of Plaintiff's FAC for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (Doc. 23.) Defendant argues that this Court lacks subject-matter jurisdiction over Count One of the FAC because Plaintiff cannot establish injury-in-fact and redressability. (*Id.* at 3-8.) Defendant also argues that Count One should be dismissed because Plaintiff's requests for injunctive relief are vague, are overly broad, and request impermissible relief. (*Id.* at 8-12.) Finally, Defendant argues that this Court lacks jurisdiction over Count Three to the extent Plaintiff alleges constitutional violations or seeks injunctive relief. (*Id.* at 13-14.)

As discussed below, the Court will grant Plaintiff's Motion for Leave to File SAC. Accordingly, Defendant's Motion to Dismiss will be denied as moot, as it addresses a pleading that is no longer operative. *See Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) ("an amended complaint supersedes the original, the latter being treated thereafter as non-existent"). However, as further discussed below, the Court will consider the arguments raised in Defendant's Motion to Dismiss in screening

Plaintiff's SAC.

## IV.   Defendant's Motion for Clarification (Doc. 36)

Defendant's Motion for Clarification asks the Court to consider the arguments raised in its Motion to Dismiss in screening Plaintiff's proposed SAC or, alternatively, to allow Defendant to respond to Plaintiff's Motion for Leave to File SAC.  (Doc. 36.) Plaintiff argues that Defendant failed to timely respond to her Motion for Leave to File SAC, and that Defendant's Motion for Clarification is merely an attempt to circumvent that failure.  (Doc. 40 at 2, 4.)[4]

The Court will grant Defendant's Motion for Clarification to the extent that, in the interests of judicial efficiency, the Court will consider the arguments raised in Defendant's Motion to Dismiss in screening Plaintiff's SAC.

## V.   Plaintiff's Motion for Consideration of GAO Report (Doc. 59)

Plaintiff asks the Court to consider a report issued by the Government Accountability Office ("GAO Report") in screening her proposed SAC and in ruling on her Motion for Preliminary Injunction and Defendant's Motion to Dismiss.  (Doc. 59.) Plaintiff argues that the GAO Report details the BOP's systemwide misuse of restrictive housing, which relates to her allegations in this case regarding her prolonged placement in restrictive housing.  (*Id.*)  Defendant argues that the Court should "deny Plaintiff's request because it is an improper piecemeal amendment to prior pleadings and does not comply with LRCiv 15.1(a)."  (Doc. 65 at 2.)  Defendant notes that the GAO Report was in existence at the time Plaintiff filed her proposed SAC and her pending Motion for Preliminary Injunction, and that Plaintiff should have attached the GAO Report to those filings in the first instance.  (*Id.* at 3.)  Defendant further argues that Plaintiff fails to explain how the GAO Report supports the claims alleged in the proposed SAC or the

---

[4] The Court notes that Plaintiff filed her Motion for Leave to File SAC before Defendant had appeared in this action.  Defendant avers that it was not served with a copy of the Motion for Leave to File SAC (Doc. 36 at 1), while Plaintiff avers that she mailed Defendant a copy of the Motion on June 8, 2024 (Doc. 40 at 2).  Regardless of whether Defendant timely received a copy of the Motion, the Court finds the interests of judicial efficiency would be served by considering the arguments raised in Defendant's Motion to Dismiss in screening Plaintiff's SAC.

1   arguments raised in the Motion for Preliminary Injunction.  (*Id.* at 3 n.2.)  Finally,
2   Defendant argues that Plaintiff's Motion is a belated attempt to file a surresponse to
3   Defendant's Motion to Dismiss.  (*Id.* at 4-5.)

4       Plaintiff could have attached the GAO Report to her Motion for Leave to File
5   SAC, her Motion for Preliminary Injunction, and her Response to Defendant's Motion to
6   Dismiss, rather than belatedly asking the Court to consider the GAO Report in
7   conjunction with those filings.  Furthermore, there is no need for the Court to consider
8   the GAO Report in evaluating Defendant's Motion to Dismiss, which is being denied as
9   moot.  Nor is there a need to consider the GAO Report in screening Plaintiff's SAC, as
10  the Court will assume the truth of the allegations of the SAC for purposes of screening.
11  However, the Court will partially grant Plaintiff's Motion to the extent it has reviewed
12  the GAO Report to determine whether it is relevant to Plaintiff's Motion for Preliminary
13  Injunction (Doc. 37).  The GAO Report discusses overuse and misuse of restrictive
14  housing by the BOP, but it does not discuss retaliatory placement in restrictive housing
15  (*see* Doc. 60), and it does not alter the Court's conclusion—discussed below—that
16  Plaintiff's Motion for Preliminary Injunction is moot.

17  **VI.    Screening of SAC**

18      Under the Prison Litigation Reform Act ("PLRA"), the Court is required to screen
19  complaints brought by prisoners seeking relief against a governmental entity or an officer
20  or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must
21  dismiss a complaint or any portion thereof if a plaintiff has raised claims that are
22  frivolous or malicious, that fail to state a claim upon which relief may be granted, or that
23  seek monetary relief from a defendant who is immune from such relief.  28 U.S.C.
24  § 1915A(b)(1)–(2).[5]

25      In Count One of the proposed SAC, Plaintiff reasserts the First Amendment

---

[5] In response to Defendant's Motion for Clarification, Plaintiff argues that screening is
not required under the PLRA, but that she has no objection to the Court screening her
proposed SAC.  (Doc. 40 at 3.)  The Court finds that screening is appropriate, as the
PLRA requires the Court to dismiss any portion of a complaint that fails to state a claim
upon which relief may be granted.

retaliation claim raised in her FAC. (Doc. 22-1 at 10, 16-25.) In support of this claim, Plaintiff alleges that BOP employees at USP-Tucson retaliated against her in violation of the First Amendment by placing her in the SHU, filing false disciplinary charges, and making false statements to procure her transfer to the SAU at USP-Allenwood. (*Id.* at 16-25.) Plaintiff seeks injunctive relief prohibiting the BOP from retaliating against her and housing her in the SAU or any similar unit. (*Id.* at 14-15.)

The doctrine of mootness—part of the case or controversy requirement of Article III of the Constitution—"requires that an actual, ongoing controversy exist at all stages of federal court proceedings." *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086 (9th Cir. 2011). "A case becomes moot . . . if events subsequent to the filing of the case resolve the parties' dispute." *Id.* When a plaintiff seeks only injunctive relief on a claim, "past exposure to illegal conduct does not in itself show a present case or controversy . . . if unaccompanied by any continuing, present adverse effects." *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (internal quotation and alteration marks omitted). "The possibility that a similar incident may occur in the future at another facility is not enough to create a 'case or controversy' for purposes of awarding declaratory or injunctive relief." *Parks v. Wren*, No. 5:12-cv-01353-SVW-KES, 2019 WL 4854854, at *10 (C.D. Cal. Aug. 6, 2019), *report and recommendation adopted*, No. 5:12-cv-01353-SVW-KES, 2019 WL 4849202 (C.D. Cal. Sept. 27, 2019). However, "a prison transfer does not defeat jurisdiction where a prisoner's injury stems from a system-wide policy." *Tiedemann v. von Blanckensee*, 72 F.4th 1001, 1008 (9th Cir. 2023) (internal quotation and alteration marks omitted).

Liberally construed, Plaintiff's SAC alleges that the BOP has a system-wide policy of retaliating against inmates—in the form of transfers and placement in restrictive housing—for activities protected by the First Amendment. (*See* Doc. 22-1 at 16-25.) Indeed, in screening Plaintiff's FAC, the Court recognized that Plaintiff's First Amendment claim seeks injunctive relief aimed at the BOP systemwide and that the claim for injunctive relief was therefore not rendered moot by Plaintiff's transfer from

1    USP-Tucson.  (Doc. 18 at 5 n.5.)[6]  The Court will require the United States to answer
2    Count One of the SAC.

3          In Count Two of the SAC, Plaintiff alleges that she has been placed in isolation
4    without due process in violation of the Fifth Amendment.  (Doc. 22-1 at 11, 21-23.)  In
5    support of this claim, she relies on the same allegations underlying her First Amendment
6    retaliation claim, namely, that BOP employees at USP-Tucson filed false disciplinary
7    charges and made false statements to procure her transfer to the SAU at USP-Allenwood.
8    (*Id.*)  Plaintiff seeks the same injunctive relief sought in the First Amendment retaliation
9    claim.  (*Id.* at 14-15.)  Liberally construed, Count Two alleges a system-wide policy of
10   placing inmates in restrictive housing without due process, and seeks injunctive relief
11   aimed at the BOP systemwide.  Accordingly, the Court finds that the claim has not been
12   rendered moot by Plaintiff's transfers, and the Court will require the United States to
13   answer Count Two of the SAC.

14         In Count Three of the SAC, Plaintiff reasserts the FTCA claim asserted in her
15   FAC, alleging that United States employees failed to protect her from an attack by inmate
16   Tyrone Brown.  (Doc. 22-1 at 12, 19-20.)  Plaintiff seeks monetary damages on this
17   claim.  (*Id.* at 14.)[7]  The Court will require the United States to answer Count Three of
18   the SAC.

19         In Count Four of the SAC, Plaintiff alleges violations of the Eighth Amendment
20   and the FTCA arising from the effects on Plaintiff's mental health of long-term
21   placement in restrictive housing.  (Doc. 22-1 at 13, 26-30.)  Plaintiff adds as individual
22   defendants Gutierrez, Zantout, Marlow, Noble, and Williams, seeking monetary damages
23   against them.  (*Id.* at 6-7, 14.)  Plaintiff alleges that Noble urged the Transgender

24

---

25   [6] The Court is unpersuaded by Defendant's argument, raised in its Motion to Dismiss,
     that Plaintiff's First Amendment claim must be dismissed because the requested
26   injunctive relief is too broad and vague.  (Doc. 23 at 8-12.)  Even if Plaintiff's requested
     injunctive relief is vague or overly broad, more appropriately tailored relief could be
27   crafted.
     [7] While the Court agrees with Defendant's arguments, raised in the Motion to Dismiss,
28   that an FTCA claim cannot be premised on alleged constitutional violations and that
     injunctive relief is unavailable under the FTCA (Doc. 23 at 13-14), the Court does not
     interpret Count Three as alleging constitutional violations or seeking injunctive relief.

1    Executive Council to house Plaintiff in the SAU at USP-Allenwood despite knowing that

2    housing Plaintiff there would place her at a heightened risk of suicide and self-harm.  (*Id.*

3    at 28.)  Plaintiff alleges that Gutierrez, Zantout, Marlow, and Williams failed to protect

4    her from incidents of self-harm in the SAU despite knowing she was suicidal and had

5    access to razors.  (*Id.* at 30.)

6         The United States is the only proper defendant in an action brought under the

7    FTCA.  *Kennedy v. U.S. Postal Serv.*, 145 F.3d 1077, 1078 (9th Cir. 1998) (per curiam).

8    Accordingly, Count Four will be dismissed to the extent it asserts FTCA claims against

9    Gutierrez, Zantout, Marlow, Noble, and Williams.

10        To the extent Plaintiff is asserting a damages claim in Count Four under *Bivens v.*

11   *Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), the Court finds that the claim

12   arises in a new context, as it differs in meaningful ways from previous *Bivens* cases

13   decided by the Supreme Court.  *See Hernandez v. Mesa*, 589 U.S. 93, 102 (2020).

14   Furthermore, special factors—including separation-of-powers principles and the

15   availability of an alternative remedial structure in the form of the administrative

16   grievance process available to federal prisoners—counsel against extending *Bivens* to this

17   new context.  *See id.*; *Egbert v. Boule*, 596 U.S. 482, 497 (2022).  As Plaintiff seeks only

18   monetary damages against Gutierrez, Zantout, Marlow, Noble, and Williams in Count

19   Four, and Plaintiff cannot obtain such damages against the individual defendants under

20   either the FTCA or *Bivens*, the Court will dismiss Gutierrez, Zantout, Marlow, Noble,

21   and Williams as defendants, and will dismiss Count Four to the extent it asserts claims

22   against those defendants.

23        The Court will require the United States to answer Count Four of the SAC to the

24   extent Plaintiff seeks a permanent injunction enjoining the BOP from placing her in

25   solitary confinement/restrictive housing.  The Court will also require the United States to

26   answer the FTCA portion of Count Four, which the Court liberally construes as alleging

27   that United States employees breached a duty to protect Plaintiff from harm arising from

28   long-term placement in solitary confinement.

1    The parties may stipulate to an extension of Defendant's deadline for answering

2    the SAC in light of their settlement.

3    **VII.   Plaintiff's Motion for Preliminary Injunction (Doc. 37)**

4    Plaintiff seeks an order enjoining the BOP from maintaining the SIS Report from

5    Investigations TCP-23-0021 in Plaintiff's Central File or using them in her

6    classifications, enjoining the BOP from housing Plaintiff in the SAU at USP-Allenwood

7    or in any other restrictive housing unit at that facility, and appointing a special master to

8    monitor the preliminary injunctive relief.  (Doc. 37 at 18.)

9    Plaintiff's request to enjoin the BOP from housing her in any restrictive housing

10   unit at USP-Allenwood is moot because Plaintiff is no longer housed at USP-Allenwood

11   and there is no indication that she is likely to be transferred back to that facility.

12   Although not entirely clear, Plaintiff appears to allege that the SIS Investigation Report

13   for TCP-23-0021 played a role in her transfer to the SAU at USP-Allenwood.  There is

14   no indication whether the report has played a role in Plaintiff's subsequent transfers.

15   Because Plaintiff's Motion relates to her prior confinement at USP-Allenwood, the Court

16   will deny the Motion as moot.

17   **VIII.  Debra Pinson's Motion to Intervene (Doc. 34)**

18   Plaintiff and her mother, Debra Pinson, move for Debra Pinson's intervention and

19   joinder in this matter, alleging that Plaintiff's transfer to the SAU at USP-Allenwood—a

20   solitary confinement facility more than 500 driving miles from Debra Pinson's

21   residence—made it "physically and economically prohibitive" for Debra Pinson to visit

22   Plaintiff, thereby infringing Debra Pinson's "constitutional rights to freedom of

23   association/substantive due process in maintaining a relationship with her daughter."

24   (Doc. 34 at 3, 5.)

25   Defendant opposes the Motion, arguing that neither permissive joinder under

26   Federal Rule of Civil Procedure 20(a)(1) nor intervention under Rule 24(b)(1)(B) is

27   appropriate.  (Doc. 45.)  Defendant argues that the Court lacks subject-matter jurisdiction

28   over Plaintiff's First Amendment retaliatory transfer claim, which is the only claim that

could potentially tie this action to Debra Pinson's alleged claims, and that even if the Court determines it has jurisdiction over the First Amendment retaliatory transfer claim, Debra Pinson's claims do not arise out of the same transaction or occurrence and do not involve a common question of law or fact. (*Id.* at 5-11.) Defendant also argues that allowing Debra Pinson to join or intervene as a plaintiff in this case would not serve the interests of justice. (*Id.* at 3, 9.)

Plaintiff is no longer housed in the SAU at USP-Allenwood, and the Court takes judicial notice that Plaintiff's current facility, FCI El Reno, is located within 500 miles of Debra Pinson's residence listed in the Motion to Intervene. (*See* Doc. 34 at 5.)[8] Debra Pinson's claims for injunctive relief are moot to the extent they are premised on allegations that Debra Pinson's constitutional rights have been violated by Plaintiff's placement in the SAU at USP-Allenwood and/or in a facility located more than 500 miles away.

Even if not entirely moot, the Motion lacks merit, as neither joinder under Federal Rule of Civil Procedure 20 nor intervention under Rule 24 is appropriate. Two or more persons may join as plaintiffs in one action if:

> (A)    they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B)    any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a)(1). "Rule 20 is designed to promote judicial economy, and reduce inconvenience, delay, and added expense." *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997). Where each plaintiff's "claim is discrete, and involves different legal issues" that "must be viewed in a separate and individual light," joinder does not serve "the interests of justice." *Id.*

"On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R.

---

[8] "The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

Civ. P. 24(b)(1)(B).  In exercising its discretion whether to allow permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

Plaintiff's claims relating to her placement in restrictive housing, and Debra Pinson's asserted claims, involve discrete legal and factual issues and will each need to be viewed in a separate and individual light.  For example, while Plaintiff's First Amendment retaliation claim relates to the reasons for Plaintiff's placement in restrictive housing, her Fifth Amendment claim involves whether the placement complied with due process, and her Eighth Amendment claim relates to the effect of the placement on Plaintiff's mental health, Debra Pinson's claims involve the effect on Debra Pinson's ability to visit her daughter that the placement in restrictive housing has caused.  Given the distinct factual and legal issues at stake, allowing the claims to proceed in one action would not promote judicial efficiency.  Furthermore, as this Court has previously noted, Plaintiff, as a non-lawyer, cannot appear as Debra Pinson's representative in this matter (Doc. 64 (citing *Johns v. County of San Diego*, 114 F.3d 874, 877 (9th Cir. 1997)), and the Court is troubled that Plaintiff has attempted to file motions on Debra Pinson's behalf.  Plaintiff's impermissible attempts to litigate on Debra Pinson's behalf are reason alone to deny the Motion to Intervene.  *See West v. Ulloa*, No. 2:17-cv-04892-VBF-KES, 2018 WL 5974346, at *4 (C.D. Cal. Feb. 7, 2018).

## IX.    Motion to Strike Response (Doc. 57)

Plaintiff moves to strike Defendant's Response to Debra Pinson's Motion to Intervene for failure to serve the Response on Debra Pinson.  (Doc. 57.)  In response, Defendant avers that Plaintiff, rather than Debra Pinson, filed and served the Motion to Intervene, but that Defendant nevertheless mailed a copy of its Response to Debra Pinson on October 7, 2024.  (Doc. 66.)

A motion to strike is proper "if it seeks to strike any part of a filing or submission on the ground that it is prohibited (or not authorized) by a statute, rule, or court order." LRCiv 7.2(m)(1).  The Local Rules of Civil Procedure allow a party to file a response to

a motion.  LRCiv 7.2(c).  Because Defendant's Response is expressly allowed by the Local Rules, the Court finds no basis to strike the filing.  Furthermore, any issues concerning lack of service on Debra Pinson have been remedied by Defendant's mailing of a copy of the Response to Debra Pinson on October 7, 2024.  (*See* Doc. 66.)  Plaintiff's Motion to Strike will be denied.

## X.    Plaintiff's Motion for Issuance of Subpoena and Appointment of Counsel (Doc. 27)

Plaintiff seeks the issuance of a subpoena pursuant to Federal Rule of Civil Procedure 45(a) and General Order 18-19, for purposes of obtaining Office of Inspector General records regarding complaints that Plaintiff and other inmates filed related to Tyrone Brown.  (Doc. 27.)  Plaintiff states that, while housed in the SAU at USP-Allenwood, she lacked access to a printer, and she was therefore unable to submit a proposed subpoena in compliance with General Order 18-19.  (*Id.* at 13-14.)  Plaintiff asks that the Court order the Clerk to mail her a blank subpoena and a blank USM-285 form.  (*Id.* at 14.)  Plaintiff also requests the appointment of counsel, arguing that she has shown a likelihood of success on the merits and that her ability to litigate her claims pro se is hindered by the claims' complexity, her placement in restrictive housing, and discovery disputes that she anticipates will arise.  (*Id.* at 8-14.)

Defendant takes no position on Plaintiff's request for the appointment of counsel but objects to her request for the issuance of a subpoena, arguing that the request is premature given the filing of Defendant's Motion to Dismiss and because the Court has not yet issued a scheduling order.  (Doc. 32 at 1-2.)  Defendant further argues that it is not possible to determine whether Plaintiff's request for documents satisfies applicable regulations and that Plaintiff's Motion does not comply with General Order 18-19 because Plaintiff did not attach a copy of her proposed subpoena.  (*Id.* at 2.)

To the extent Plaintiff seeks the issuance of a subpoena, the Court will deny her Motion without prejudice and with leave to refile—after the commencement of discovery—a motion that includes a proposed subpoena, in compliance with General

1  Order 18-19.  Although it is unclear whether Plaintiff continues to lack access to a
2  printer, the Court will grant Plaintiff's request for a blank subpoena and blank USM-285
3  form to assist her in complying with General Order 18-19.

4          There is no constitutional right to the appointment of counsel in a civil case.  *See*
5  *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 269 (9th Cir. 1982).   In
6  proceedings in forma pauperis, the court may request an attorney to represent any person
7  unable to afford one.  28 U.S.C. § 1915(e)(1).  Appointment of counsel under 28 U.S.C.
8  § 1915(e)(1) is required only when "exceptional circumstances" are present.  *Terrell v.*
9  *Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).   A determination with respect to
10 exceptional circumstances requires an evaluation of the likelihood of success on the
11 merits as well as the ability of the plaintiff to articulate her claims pro se in light of the
12 complexity of the legal issues involved.  *Id.*  "'Neither of these factors is dispositive and
13 both must be viewed together before reaching a decision.'"  *Id.* (quoting *Wilborn v.*
14 *Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)).

15         Having considered both elements, the Court does not find that exceptional
16 circumstances require the appointment of counsel at this time.  Plaintiff's likelihood of
17 success on the merits of her claims is unclear at this point, and Plaintiff is an experienced
18 pro se litigator who has demonstrated an ability to articulate her claims pro se.
19 Furthermore, speculative concerns about future discovery disputes do not support the
20 need to appoint counsel at this time.

21  **XI.    Plaintiff's Motion for Leave to Conduct Expedited Discovery (Doc. 38)**

22         Plaintiff seeks leave to conduct expedited discovery with respect to her Motion for
23 Preliminary Injunction and the claims in her proposed SAC.  (Doc. 38.)   Defendant
24 argues that Plaintiff fails to satisfy her burden of showing the need for expedited
25 discovery because she does not specify the discovery she is seeking.  (Doc. 44 at 2-4.)
26 Defendant also asks the Court to strike a portion of Plaintiff's Motion as an unauthorized
27 surresponse to Defendant's Motion to Dismiss.  (*Id.* at 5-6.)[9]

28 ─────────────
[9] The Court declines to strike any portion of the Motion but will consider Plaintiff's
substantive arguments concerning the Motion to Dismiss only to the extent they impact

Rule 26(d)(1) of the Federal Rules of Civil Procedure precludes parties from seeking discovery from any source before the parties have conferred as required by Rule 26(f).  Rule 26(f), in turn, provides that the "parties must confer as soon as practicable— and in any event at least 21 days before a scheduling conference is to be held or a scheduling order is due under Rule 16(b)."  Rule 16(b) states that a district judge must issue a scheduling order after receiving the parties' Rule 26(f) report or holding a scheduling conference.  Fed R. Civ. P. 16(b)(1).  Rule 16(b) further states: "The judge must issue the scheduling order as soon as practicable, but unless the judge finds good cause for delay, the judge must issue it within the earlier of 90 days after any defendant has been served with the complaint or 60 days after any defendant has appeared."  Fed. R. Civ. P. 16(b)(2).  Good cause for expedited discovery exists "where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party."  *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002).

Given the filing of Defendant's Motion to Dismiss challenging this Court's subject-matter jurisdiction, the Court finds good cause to delay issuance of a scheduling order until after Defendant files an answer to Plaintiff's SAC.  For the same reasons, and due to Plaintiff's failure to specify what discovery she seeks to conduct on an expedited basis, the Court finds that the prejudice to Defendant of conducting expedited discovery outweighs the need for such discovery.  Accordingly, Plaintiff's Motion for Leave to Conduct Expedited Discovery will be denied.

## XII.   Plaintiff's Motion for Expedited Decisions (Doc. 63)

Plaintiff's Motion for Expedited Decisions on Pending Motions seeks expedited resolution of Plaintiff's Motion for Leave to File SAC and Defendant's Motion to Dismiss, arguing that the Motion to Dismiss is meritless and has delayed the progression of this case, thereby prolonging "severe constitutional deprivations" arising from the

---

whether good cause exists under Federal Rule of Civil Procedure 16(b)(2) to delay issuance of a scheduling order and commencement of discovery.

conditions of Plaintiff's prior confinement in the SAU at USP-Allenwood.  (Doc. 63 at 1, 9-10.)  Defendant takes no position on Plaintiff's request for expedited rulings but asks the Court to strike as an unauthorized surresponse the portion of Plaintiff's Motion that argues the merits of Defendant's pending Motion to Dismiss.  (Doc. 68.)[10]

Plaintiff moves for leave to file an untimely reply in support of her Motion for Expedited Decisions, averring that she did not receive a copy of Defendant's Response until November 12, 2024, due to her transfers between facilities.  (Doc. 88.)  The Court will grant Plaintiff's Motion for Leave to File Untimely Reply (Doc. 88) and has considered the Reply attached thereto (Doc. 88-1).

The Court will grant Plaintiff's Motion for Expedited Decisions to the extent this Order provides any of the relief requested.

### XIII.  Plaintiff's Motion to Withdraw (Doc. 67)

On October 7, 2024, Plaintiff moved to withdraw various filings on the grounds that she had been informed she would be transferred to a Reintegration Unit and would no longer be housed in restrictive housing.  (Doc. 67.)  Plaintiff later moved to withdraw her Motion to Withdraw.  (Doc. 69.)  The Court will deem the Motion to Withdraw as withdrawn.

### XIV.  Plaintiff's Motion for Issuance of Order to Show Cause (Doc. 69) and Related Motions

Plaintiff filed her Motion for Issuance of Order to Show Cause while temporarily housed at USP-Terre Haute.  (Doc. 69.)  In the Motion, Plaintiff alleged that the BOP was denying her access to a telephone and email; was refusing to provide her with pens, writing paper, envelopes, and postage stamps; was denying her access to a photocopier and a law library; and was withholding her legal files.  (*Id.* at 1-2.)  Plaintiff further alleged that the BOP had suddenly discontinued her medications.  (*Id.* at 2-3.)  Plaintiff asked the Court to order the BOP "to explain and, if possible, resolve" her concerns on an expedited basis.  (*Id.* at 4.)

---

[10] The Court declines to strike any portion of Plaintiff's Motion but has considered the arguments raised therein only to the extent they are relevant to the relief requested.

The Court ordered Defendant to file an expedited response.  (Doc. 71.)  Defendant filed a Response on October 29, 2024 (Doc. 72), followed by two Supplements (Docs. 78, 82).  In its initial Response, Defendant averred that Plaintiff was in transit from USP-Allenwood to USP-Terre Haute from October 7-8, 2024; that she arrived at USP-Terre Haute on October 9, 2024; and that she was immediately placed in the SHU under administrative detention due to safety concerns arising from Plaintiff's relationship to another inmate housed in general population at that institution.   (Doc. 72 at 2.)  Defendant denied that Plaintiff lacked access to a telephone, email, or mail at USP-Terre Haute.  (*Id.* at 2-3.)  Defendant further disputed Plaintiff's allegations that she lacked access to pens, paper, envelopes, postage, and a law library.  (*Id.* at 4-5.)  Defendant averred that Plaintiff's legal paperwork was being stored with her personal property, and that Plaintiff received a box of certified legal mail on October 17, 2024, but refused to sign for it.  (*Id.* at 4.)  Defendant further averred that, on October 11, 2024, medical staff at USP-Terre Haute discovered that staff at USP-Allenwood had erroneously discontinued Plaintiff's medications rather than continuing them in-transit, and that the Clinical Director, upon learning of the error, issued a verbal order to resume twelve medications.  (*Id.* at 5.)

In its first Supplement filed on October 31, 2024, Defendant averred that Plaintiff had been re-designated and was being transferred to FCI El Reno, a medium security facility.  (Doc. 78 at 2.)   In its second Supplement filed on November 14, 2024, Defendant averred that Plaintiff arrived at FCI El Reno on November 1, 2024, and was initially housed in the general population unit but, on November 12, 2024, was moved to the SHU on administrative detention after concerns were raised regarding Plaintiff's safety in general population.  (Doc. 82 at 2.)  Defendant further averred that Plaintiff's legal calls had been rescheduled and that Plaintiff had been receiving all prescribed medications since arriving at FCI El Reno.  (*Id.* at 3-4.)  Defendant discussed Plaintiff's access to telephones, email, pens, paper, envelopes, postage, legal paperwork, and the law library while she was housed in the general population unit at FCI El Reno.  (*Id.*)

Plaintiff filed a sealed Reply in support of her Order to Show Cause on November 19, 2024, complaining that her transfers were interfering with her ability to communicate with her attorney in a separate case, *Pinson v. United States*, No. 22-cv-00298-RM, and asserting that Defendant was violating aspects of injunctive relief issued in that case. (Doc. 86 at 3-5, 9-10.)   Plaintiff also complained of safety concerns affecting her as a transgender inmate in general population at FCI El Reno.   (*Id.* at 5-12.)   Plaintiff confirmed that her medications had been resumed and that she had been provided stamps, paper, and envelopes.   (*Id.* at 9.)   However, she averred that her legal files remained in USP-Terre Haute.   (*Id.*)   Plaintiff thereafter filed a Motion for Leave to File Reply, seeking leave to file a supplemental reply discussing her current conditions of confinement, and asserting that Defendant's Supplements are "misleading due to rapidly changing locations and conditions affecting plaintiff within those locations."  (Doc. 91 at 3.)

Plaintiff then filed a Motion for Order to File Declarations and Motion for Extension of Time to File Replies, in which she seeks leave to file untimely replies in support of her Motion for Consideration of GAO Report and Motion to Strike Response, and asks the Court to order the BOP's Director and Regional Director to file declarations under penalty of perjury explaining why she was placed in the SHU at FCI El Reno. (Doc. 92.)   In support of these requests, Plaintiff complains about her conditions of confinement, and she avers that she continues to lack access to her legal files and is unable to obtain pens, paper, envelopes, and postage stamps in the SHU at FCI El Reno without selling her meal trays.  (*Id.*)

Defendant moves to strike Documents 86, 91, and the majority of Document 92, arguing that the filings are an improper attempt to litigate issues arising in *Pinson v. United States*, No. 22-cv-00298-RM.  (Doc. 95.)  Plaintiff argues that there is no basis to strike the filings and that doing so would infringe upon her right to freedom of speech. (Doc. 99.)

In light of Plaintiff's pro se status, the Court declines to strike the filings at issue;

however, the discussion of extraneous matters contained in those filings weighs against granting Plaintiff's requests to file untimely replies in support of her Motion for Consideration of GAO Report and Motion to Strike Response. The Court finds it appropriate to resolve those Motions on the existing briefs, as set forth above. The Court also declines to order the BOP's Director and Regional Director to file declarations explaining why Plaintiff was placed in the SHU at FCI El Reno.

Defendant's most recent Supplemental Response to Plaintiff's Motion for Issuance of Order to Show Cause discusses in detail the conditions that Plaintiff faced in the general population unit at FCI El Reno, but it does not adequately discuss the conditions that Plaintiff faces in the SHU. (*See* Doc. 82.) Given that Plaintiff avers that she continues to lack access to her legal files and cannot obtain paper, envelopes, and stamps without selling her meal trays (*see* Doc. 92), the Court will order Defendant to file a third Supplement addressing Plaintiff's access to legal files, legal supplies, mail, and a law library while housed in the SHU at FCI El Reno. Plaintiff may file a reply to Defendant's third supplemental response, but the reply must be limited to addressing Plaintiff's access to legal files and supplies, mail, and a law library. If the parties jointly agree to vacate these briefing deadlines in light of their pending settlement, they may file a stipulation.

**IT IS ORDERED**:

1. Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. 22) is **granted**, as set forth above. The Clerk of Court is directed to file pages 6-30 of Document 22-1 as Plaintiff's Second Amended Complaint.

2. Count Four of Plaintiff's Second Amended Complaint is **dismissed with prejudice** to the extent it is asserted against the individual defendants.

3. Mark Gutierrez, Muhammad Zantout, Christopher Marlow, Ashley Noble, and Stephen Williams are **dismissed**.

4. Defendant United States of America shall answer Counts One through Four of the Second Amended Complaint within the standard timeframe provided by the Federal Rules of Civil Procedure.

5.  Defendant's Motion to Partially Dismiss First Amended Complaint for Lack of Subject Matter Jurisdiction (Doc. 23) is **denied as moot**.

6.  Plaintiff's Motion for Issuance of Subpoena and Appointment of Counsel (Doc. 27) is **partially granted** to the extent that the Clerk is directed to mail Plaintiff a blank subpoena and a blank USM-285 form.  The Motion is otherwise **denied without prejudice**.

7.  Debra Pinson's Motion to Intervene and for Permissive Joinder (Doc. 34) is **denied**.

8.  Defendant's Motion for Clarification (Doc. 36) is **granted**, as set forth above.

9.  Plaintiff's Motion for Preliminary Injunction (Doc. 37) is **denied as moot**.

10. Plaintiff's Motion for Leave to Conduct Expedited Discovery (Doc. 38) is **denied**.

11. Plaintiff's Motion to Strike Response to Motion to Intervene (Doc. 57) is **denied**.

12. Plaintiff's Motion for Consideration of GAO Report (Doc. 59) is **partially granted and partially denied**, as set forth above.

13. Plaintiff's Motion for Expedited Decisions on Pending Motions (Doc. 63) is **granted** to the extent this Order provides any of the relief requested, and is otherwise **denied**.

14. Plaintiff's Motion to Withdraw (Doc. 67) is itself **deemed withdrawn**.

15. Plaintiff's Motion for Issuance of Order to Show Cause (Doc. 69) is **partially granted** to the extent the Court will allow Plaintiff to withdraw her Motion to Withdraw and to the extent the Court has required Defendant to file responses and will require a third supplemental response.

16. Within **seven (7) days** of the date this Order is filed, Defendant shall file a third supplemental response to Plaintiff's Motion for Issuance of Order to Show Cause (Doc. 69).   The third supplemental response shall address

Plaintiff's current access to legal files, legal supplies, mail, and a law library. Plaintiff may file a reply to Defendant's third supplemental response within **seven (7) days** of service of the supplemental response, limited to addressing the issue of her access to legal files, legal supplies, mail, and a law library.

17. Plaintiff's Motion for Leave to File Untimely Reply (Doc. 88) is **granted** and Plaintiff's Reply in Support of Motion for Expedited Rulings (Doc. 88-1) is considered timely.

18. Plaintiff's Motion for Leave to File Reply (Doc. 91) is **partially granted** to the extent the Court is allowing Plaintiff to file a reply to Defendant's third supplemental response, as set forth above. The Motion is **denied** to the extent it requests any other relief.

19. Plaintiff's Motion for Order to File Declarations and Motion for Extension of Time to File Replies (Doc. 92) is **denied**.

20. Defendant's Motion to Strike (Doc. 95) is **denied**.

Dated this 24th day of February, 2025.

_____
Honorable Rosemary Márquez
United States District Judge

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
_____ District of _____

|  |  |  |
|---|---|---|
| _____ | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| _____ | ) | |
| *Defendant* | ) | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: _____

*(Name of person to whom this subpoena is directed)*

❏ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: | Date and Time: |
|---|---|
|  |  |

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|  |  |

      The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

        *CLERK OF COURT*

                          OR

        _____      _____

            *Signature of Clerk or Deputy Clerk*                   *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
_____ , who issues or requests this subpoena, are:

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❑  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**U.S. Department of Justice**
United States Marshals Service

# PROCESS RECEIPT AND RETURN
*See "Instructions for Service of Process by U.S. Marshal"*

| PLAINTIFF | COURT CASE NUMBER |
|---|---|
| | |
| DEFENDANT | TYPE OF PROCESS |
| | |

**SERVE AT** {

NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC. TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN

ADDRESS *(Street or RFD, Apartment No., City, State and ZIP Code)*

| SEND NOTICE OF SERVICE COPY TO REQUESTER AT NAME AND ADDRESS BELOW | Number of process to be served with this Form 285 |
|---|---|
| | Number of parties to be served in this case |
| | Check for service on U.S.A. |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE *(Include Business and Alternate Addresses, All Telephone Numbers, and Estimated Times Available for Service)*:

| Signature of Attorney other Originator requesting service on behalf of: ☐ PLAINTIFF ☐ DEFENDANT | TELEPHONE NUMBER | DATE |
|---|---|---|
| | | |

## SPACE BELOW FOR USE OF U.S. MARSHAL ONLY - DO NOT WRITE BELOW THIS LINE

| I acknowledge receipt for the total number of process indicated. *(Sign only for USM 285 if more than one USM 285 is submitted)* | Total Process | District of Origin No. | District to Serve No. | Signature of Authorized USMS Deputy or Clerk | Date |
|---|---|---|---|---|---|
| | | | | | |

I hereby certify and return that I ☐ have personally served , ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual, company, corporation, etc., at the address shown above on the on the individual, company, corporation, etc. shown at the address inserted below.

☐ I hereby certify and return that I am unable to locate the individual, company, corporation, etc. named above *(See remarks below)*

| Name and title of individual served *(if not shown above)* | Date | Time | ☐ am ☐ pm |
|---|---|---|---|
| | | | |

| Address *(complete only different than shown above)* | Signature of U.S. Marshal or Deputy |
|---|---|
| | |

*Costs shown on attached USMS Cost Sheet >>*

REMARKS

Form USM-285
Rev. 03/21

**INSTRUCTIONS FOR COMPLETING USM-285, PROCESS RECEIPT AND RETURN**

- The Form USM-285 is a five-copy form set designed as a control document for process served by a U.S. Marshal or designee. Process may include, but is not limited to, a summons and complaint, subpoena, writ, or court order. The United States Marshals Service (USMS) is authorized by law (28 U.S.C. § 1921) to charge fees for the service of process. The amount of fees charged is established by regulation (28 C.F.R. §0.114). Except in cases where the litigant has been granted permission by the court for waiver of prepayment of fees and costs, the USMS must request advance payment of the estimated fees and expenses for service of process.

- Please type or print legibly. Submit one copy of the Form USM-285 and one copy of each process for each individual, company, corporation, government agency, etc., to be served or property to be seized.

- In cases where the court has directed the USMS to effect service of a summons and complaint upon an officer or agent of the United States Government, submit a copy of the summons and complaint and Form USM-285 for each officer or agent upon whom service is desired. Submit two (2) additional copies of the summons and complaint for service upon the Government of the United States. The U.S. Marshal or designee will serve one copy upon the U.S. Attorney and will forward the other copy to the Attorney General of the United States. (When the applicable box is checked, completion of the final signature block by the U.S. Marshal or designee certifies service on the U.S. Attorney and the U.S. Attorney General, regardless of whether other defendants on the summons were served). Failure to provide sufficient copies will delay service of the summons.

- Mark all applicable check boxes and use the "Special Instructions" to advise of any information that will assist the USMS in expediting service. You are responsible for providing accurate and sufficient information that will identify the individual or entity to be served or the property to be seized.

- If more than one item of process and Form USM-285 is submitted on a single case, the U.S. Marshal or designee will receipt for all of them on the first Form USM-285. You will receive for your records the "Acknowledgment of Receipt" copy for all the USM-285 forms you submit. When the process is served, you will receive the "Notice of Service" copy. This copy will be identical to the return to the Clerk of the U.S. District Court.

- Upon completion of all services, you will receive a "Billing Statement" copy of Form USM-285. You should return this "Billing Statement" copy to the USMS, together with your payment, in the form of a certified or bank check payable to the U.S. Marshal, for any amounts still owed. The USMS will not accept personal checks.